ELECTRICAL WHOLESALERS, INC., ET AL. *v.*
M.J.B. CORPORATION
(AC 26757)

McLachlan, Lavine and Dupont, Js.

Argued September 29, 2006—officially released January 23, 2007

*George M. Purtill*, with whom, on the brief, was *Seth Jacoby*, for the appellants (plaintiffs).

*T. J. Donohue, Jr.*, for the appellee (named defendant).

*Opinion*

LAVINE, J. The issue in this appeal is whether the named parties had a contract for the sale of certain real property that would entitle the plaintiffs to equitable relief. We conclude that the trial court properly determined that there was no meeting of the minds as to the sale of the land and no other basis for awarding equitable relief, and, accordingly, affirm the court's judgment in favor of the defendant landowner.

The plaintiffs, Electrical Wholesalers, Inc., and its principals, Arthur Namerow and Robert Namerow,

appeal from the judgment of the trial court rendered in favor of the defendants, M.J.B. Corporation (corporation) and the city of Hartford (city).[1] The plaintiffs sought, inter alia, specific performance as to the sale of a parcel of land (small parcel) owned by the corporation and an injunction ordering the city to remove certain improvements the city made to land the plaintiffs own. On appeal, the plaintiffs claim that the court abused its discretion by failing to order (1) specific performance of an agreement to sell the land or damages for loss of the benefit of the bargain and (2) injunctive relief for the removal of improvements to their land.

The following facts, as found by the court, *Hon. Mary R. Hennessey*, judge trial referee, are relevant to the plaintiffs' appeal. The plaintiffs and the corporation own abutting real property in Hartford. The corporation's five and one-half acres also abut Garden, Walnut and Sargeant Streets and Homestead Avenue. The corporation, a not-for-profit entity, constructed a building that fronts Sargeant Street and is managed by Tunxis Management Company (Tunxis). Since 1988, the plaintiffs have utilized the corporation's small parcel as a turnaround for the 50 to 100 trucks that use their loading dock every day. The plaintiffs maintain the small parcel and clear it of snow. When the city wanted to realign Homestead Avenue to improve vehicular access to downtown Hartford, it negotiated with both the plaintiffs and the corporation to construct improvements on land owned by each of them. As a result of the realignment, the smaller parcel is no longer accessible to the corporation. The plaintiffs have exclusive access to it.

Arthur Namerow informed agents of the corporation that the plaintiffs wanted to purchase the small parcel.

---

[1] The city was cited in as an additional defendant after the action was commenced.

In 1999, he discussed the plaintiffs' desire to buy the land with the Reverend Thomas J. Barry, president of the corporation. A purchase price of $75,000 was discussed. Nothing more was said or done about the plaintiffs' purchasing the small parcel until November 2, 2001. At about that time, the city's assistant director of public works sent a letter to the administrator of the city's grants program, addressing changes to the realignment project necessitated by the corporation's decision not to sell the small parcel but to convert it to a parking area.

The plaintiffs commenced this action on November 6, 2003, in a one count complaint. The plaintiffs alleged that in 1999 they had agreed to purchase and the corporation had agreed to sell the small parcel as soon as practicable. They also alleged that in February, 2001, the corporation or its agents confirmed the agreement and that the plaintiffs agreed to perform certain acts in addition to paying $75,000 for the small parcel. The plaintiffs claimed that they were ready, willing and able to perform the agreement and had demanded that the corporation convey the small parcel, but the corporation had not done so. The plaintiffs filed a lis pendens concerning the action in the Hartford land records.

On March 8, 2004, the court, *Sheldon, J.*, granted the plaintiffs' motion to cite in the city as a party defendant. The plaintiffs' amended complaint alleged in the second count that the corporation, acting through its agents, induced them to act, that it would be inequitable to permit the corporation to avoid its agreement to convey the small parcel and that the corporation should be estopped from denying its agreement. In the third count, the plaintiffs alleged that the corporation's agents made representations to them that were false and misleading and were known by the corporation to be false and misleading, that the plaintiffs relied on the misrepresentations of the corporation's agents and that they had

been damaged thereby. In the fourth count, the plaintiffs alleged that the corporation's agents made fraudulent misrepresentations. The fifth count alleged that the corporation represented to the city that it would convey the small parcel to the plaintiffs. The plaintiffs also alleged that in reliance on the representations of the corporation's agents, the city constructed improvements on land owned by the plaintiffs and land owned by the corporation. The plaintiffs alleged that they had given the city permission to construct the improvements on their land on the basis of the corporation's representations. If the representations were false or inaccurate, it was alleged, the plaintiffs' permission was obtained improperly and was not effective. The improvements to the plaintiffs' land by the city, therefore, were a nuisance or trespass. The plaintiffs alleged that they had been damaged as a result of the nuisance or trespass. If there was no authority to construct the improvements, the improvements must be removed at the defendants' cost.

The corporation filed an answer denying the material allegations of the complaint and alleged in a special defense that the plaintiffs violated the Connecticut Unfair Trade Practices Act (CUTPA),[2] General Statutes § 42-110a et seq. The corporation also alleged a three count counterclaim: ejectment, unjust enrichment and slander of title. The city denied the material allegations of the amended complaint and asserted two special defenses: the action was barred by the doctrine of governmental immunity and by General Statutes § 52-557n. The plaintiffs denied all of the special defenses asserted by the defendants and the material allegations of the corporation's counterclaims.

Following a trial to the court, Judge Hennessey concluded that there never was an agreement between the

---

[2] At trial, the corporation failed to brief its CUTPA special defense, and the court considered it abandoned.

plaintiffs and the corporation because there was no offer, acceptance and meeting of the minds. The court found that although Arthur Namerow and Barry discussed the possibility of the corporation's selling the small parcel to the plaintiffs, Barry had no authority to make a commitment. Only the corporation's board of directors had that authority. The issue of parking always was prevalent in the discussions, as the corporation was unwilling to part with the small parcel until it had found alternative parking space. Representatives of the city were present at a meeting in which the sale of the land was discussed. When the city's representatives left the meeting, they understood that an alternative parking location was essential to the corporation.

The plaintiffs claim that their participation in the city's beautification plan is evidence of part performance of a contract to sell the small parcel. The court found that the plaintiffs water the landscaping on a berm the city constructed. Arthur Namerow knew that the plaintiffs did not own the small parcel when he agreed that the plaintiffs would water the berm. He testified that the plaintiffs would abide by their commitment to the city, even if they did not own the land. The court concluded that the plaintiffs' maintenance of the berm was evidence of an agreement between the plaintiffs and the city, not evidence of a contract between the plaintiffs and the corporation for the sale of the small parcel. Consequently, the court found that there was no part performance that would take the sale out of the statute of frauds. See General Statutes § 52-550. The court found that the corporation was not involved in the agreement concerning the maintenance of the berm and had not made a material misrepresentation to the plaintiffs with respect to the watering agreement.

With respect to the plaintiffs' removing snow from the small parcel, the court found that they had an incentive to do so. As many as 100 trucks a day gain access

to the plaintiffs' loading dock by turning around on the small parcel. This finding also pertains to the corporation's counterclaims. Until this action was commenced, the corporation had permitted the plaintiffs to use the small parcel to enable trucks to turn around. In doing so, according to Barry, the corporation was trying to be a good neighbor. With respect to the corporation's claim that the plaintiffs were unjustly enriched because trucks were able to use the corporation's land to turn around without payment, the court found that there was no evidence that the corporation ever demanded a fee.

The corporation's slander of title claim was founded on the notice of lis pendens of the plaintiffs' claim of specific performance. The corporation argued that the claim was wrongful and without basis. The court found that it took a trial to resolve the question of whether the parties had an agreement for the plaintiffs to acquire the land, as the plaintiffs had a good faith belief that they had a right to purchase the land. The court found in favor of the plaintiffs on the corporation's counterclaims but noted that the plaintiffs' special defenses to the counterclaims were unavailing because there had been no agreement.

The court, therefore, rendered judgment in favor of the corporation on counts one through five of the plaintiffs' amended complaint and judgment in favor of the plaintiffs on the corporation's counterclaims.[3] The plaintiffs appealed.

The plaintiffs alleged equitable claims for specific performance; see Marquart & Roche/Meditz & Hackett, Inc. v. Riverbend Executive Center, Inc., 74 Conn. App. 412, 421 n.2, 812 A.2d 175 (2003); and an injunction. See Broadnax v. New Haven, 270 Conn. 133, 170, 851 A.2d 1113 (2004). We review claims concerning the

---

[3] The court dismissed the fifth count against the city.

denial of equitable relief under the abuse of discretion standard. "In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *First National Bank of Chicago* v. *Maynard*, 75 Conn. App. 355, 358, 815 A.2d 1244, cert. denied, 263 Conn. 914, 821 A.2d 768 (2003).

## I

## A

The plaintiffs' first claim is that the court abused its discretion by not awarding specific performance to convey the small parcel to them. The plaintiffs argue that the statute of frauds; General Statutes § 52-550;[4] does not preclude specific performance and refer to numerous exhibits placed in evidence to support their claim that there was a written agreement between them and the corporation. We agree with the court that there is no writing or writings sufficient to evidence a meeting of the minds as to the sale of the small parcel, which would satisfy § 52-550 (a) (4).

"The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A

---

[1] General Statutes § 52-550 provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . .

"(b) The section shall not apply to parol agreements for hiring or leasing real property, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of the term."

finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 238, 907 A.2d 1274 (2006).

"In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . . [A]n agreement must be definite and certain as to its terms and requirements." (Citations omitted; internal quotation marks omitted.) *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 510, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993).

"The primary purpose of the statute of frauds is to provide reliable evidence of the existence and the terms of the contract, the requirements of the statute can be met either by a single document or . . . by a series of related writings which, taken together, describe the essential terms and conditions of the contract. . . . The memorandum required by the statute is sufficient if it states the contract between the parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain. . . . The memorandum of the contract need not be the contract itself . . . . The memorandum need not be made at

the time of the contract; it may be made and signed afterward. . . . The moment written evidence of the contract under his hand, in whatever form, exists, the contract is taken out of the statute . . . . Cross references to the agreement in documents can adequately demonstrate their interconnection." (Citations omitted; internal quotation marks omitted.) *Killion* v. *Davis*, 69 Conn. App. 366, 372, 793 A.2d 1237, cert. denied, 260 Conn. 931, 799 A.2d 295 (2002).

"There is nothing in the statute of frauds to prevent several writings being tested together for sufficiency as a memorandum, as long as each is signed by the defendant. The issue is not so easy to resolve, however, when a mixture of signed and unsigned writings is relied upon to establish a sufficient memorandum. The determination is not to be made mechanically, but is a matter of evidentiary sufficiency. What is required is that the writings sufficiently evidence the fact that a contract was made and what its terms are, so that under the circumstances of the particular case, there is no serious possibility that the assertion of the contract is false." 4 A. Corbin, Contracts (Rev. Ed. 1997) § 23.3, pp. 771–72.

The plaintiffs draw our attention to three exhibits that they claim together contain the essential terms and conditions of the contract for the sale of the small parcel. Exhibit sixty-four is a February 16, 1999 letter from Barry to Judi Martin at BankBoston of Connecticut. Exhibit sixty-four states in part: "I am writing to you today to request a partial release of the mortgage which the [corporation] granted to BankBoston [of Connecticut] on the property at 20-28 Sargeant St. and 255 Garden St. in Hartford.

"[The corporation] has always had an understanding with the City of Hartford to give to the City a portion of the property at 255 Garden St. in full satisfaction of

back taxes accruing on the property. Also, [the corporation] has the opportunity to sell the remaining portion of the property at 255 Garden St. to Electrical Wholesalers, Inc. [The corporation] plans to use the proceeds of such sale to further the goals of the renovation of Veeder Place. The sale price of this portion of the property is $115,000 net to [the corporation]."

The second exhibit on which the plaintiffs rely is exhibit four, an August 4, 1999 letter from Keith F. Wolf, an employee of Tunxis, to Arthur Namerow. Exhibit four states in part: "In regards to your *potential* purchase of the lot neighboring your parcel we have been trying to identify the landscaping requirements that the City of Hartford has laid out at this time. We feel it is best for you to work directly with [the] City and their landscape architects in determining what landscaping will be provided, as you will bear the cost of maintaining the landscaping. The City will pay for the plantings so our previously negotiated price should not be affected. . . ." (Emphasis added.)

The third piece of evidence on which the plaintiffs rely is a copy of e-mail from Wolf to Kyle Meccariello contained in exhibit sixty-seven. Wolf's e-mail was in response to an e-mail message from Meccariello. Meccariello's e-mail is dated February 12, 2003, and Wolf's reply is dated February 13, 2003. We will recite the entire text of exhibit sixty-seven beginning with the earlier of the two messages.

"Father Barry & Executive Board members, I received a letter from Art Namerow that I will make available to all of you. Essentially, he would like to purchase the piece of land that the [corporation] owns adjacent to his parking lot for $75,000. He is claiming that this price was agreed upon back in 1999. I recall hearing a number of $125,000 back when we met almost two years ago with him, Brendan Fox, City of Hartford

representatives and some others. Furthermore, he claims that we do not have an easement to your property from Homestead Avenue through the curb cut the City installed on his property during the Homestead Street realignment project. We were [led] to believe that the City was granting an easement as part of that project because the were elimination [sic] of the old curb cut to your property that was on Garden Street. I intend to call Jim Shays from the City and ask him about the easement situation. Kyle."

Wolf responded to Meccariello as follows. "My memory is that the $75,000 price was if Art Namerow was to purchase the property 'as is', which included the old garage that was on the site. We had always estimated a price of $25,000 to $30,000 to abate and remove that building. I believe that the original offered price of $125,000 was negotiated to $105,000, and then we took $30,000 off that price if he was to abate and remove the building. Since we abated and removed the building I believe a sale to Art should be in the $105,000 plus range. However, since all these figures are based on an appraisal that is about 4 years old, would it be prudent to get a new appraisal of the land (but must consider cost of appraisal). Keith."

We note that exhibit sixty-four is the earliest communication concerning the sale of the small parcel and is addressed to a BankBoston of Connecticut representative seeking release of a mortgage due to the city's forgiving certain unpaid taxes, a matter that is not part of the alleged real estate transaction. See *669 Atlantic Street Associates* v. *Atlantic-Rockland Stamford Associates*, 43 Conn. App. 113, 123, 682 A.2d 572 ("[w]hen there are multiple writings regarding the *same* transaction, the writings should be considered together to determine the intent of the parties" [emphasis added; internal quotation marks omitted]), cert. denied, 239 Conn. 949, 950, 686 A.2d 126 (1996). Furthermore, exhibit sixty-four describes the sale of land as an opportunity, not a matter under contract, and presumably

was made to induce BankBoston of Connecticut to release the mortgage. Exhibit four is dated approximately six months later in 1999 and makes reference to a *possible* sale of the small parcel. The most recent communication, the February, 2003 e-mail, demonstrates that there is no agreement as to the price the plaintiffs were to pay for the small parcel, as the purchase price was contingent on acts the plaintiffs never performed. Several years after the discussion of a purchase price, the corporation's agents questioned the value of the land and whether it should be reappraised. Contrary to the plaintiffs' contention, we conclude, as did the trial court, that there was no agreement between the plaintiffs and the corporation.

The plaintiffs also argue that their taking care of the berm demonstrates the existence of an agreement between them and the corporation and that tending the berm constitutes part performance to take the sale out of the statute of frauds. In support of their argument, the plaintiffs rely on the rule of part performance discussed in *Ubysz* v. *DiPietro*, 185 Conn. 47, 440 A.2d 830 (1981). "[A]cts on the part of the promisee may be sufficient to take a contract out of the statute [of frauds] if they are such as clearly refer to some contract in relation to the matter in dispute. . . . [T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. . . . The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) Id., 54.

We acknowledge the principle of law on which the plaintiffs rely but conclude that it does not apply to the facts at hand. Although the plaintiffs believed that they had an *agreement* with the corporation to purchase the small parcel, they are the only ones who held that belief. Discussions about the sale of the land may have taken place between the plaintiffs and the corporation's agents in the presence of third parties, but those discussions alone do not indicate that an agreement—or a meeting of the minds—actually existed. The city is not the party to be charged, and what the city's agents said is inconsequential.

We agree with the court that the plaintiffs' maintenance of the berm is evidence of an agreement between the plaintiffs and the city, not with the corporation. The corporation had its own agreement with the city, i.e., the city would forgive the corporation's tax debt in consideration of the corporation's permitting its land to be used to restructure the system of streets.

## B

The plaintiffs also claim that they are entitled to specific performance on the basis of promissory estoppel. In support of that claim, the plaintiffs have listed what they assert to be certain facts about conversations various individuals had about the sale of the small parcel. The court found that the plaintiffs could cite no representation of material fact made with the intent to induce the plaintiffs to maintain the berm. The plaintiffs further argue that the silence of certain corporation agents at a meeting with the city is tantamount to an admission that there was an agreement of sale. The court found that the extent of the agents' authority at the time was unknown and that only the corporation's board of directors had authority to sell the small parcel. The plaintiffs have cited no evidence that would demonstrate that the court's findings were clearly erroneous.

Our standard of review permits us to review the evidence to determine whether the court's findings of fact find support in the record. As an appellate court, we are not permitted, however, to find facts. *Zitnay* v. *Zitnay*, 90 Conn. App. 71, 81, 875 A.2d 583, cert. denied, 276 Conn. 918, 888 A.2d 90 (2005). Many of the facts on which the plaintiffs would have us rely were not found by the trial court, and there is no articulation as to them. It is the appellant's responsibility to provide an adequate record for our review. See Practice Book § 61-10.

The plaintiffs also contend the trial court and this court should draw an adverse inference from the absence of certain minutes of corporation board meetings. The trial court made no findings of fact with regard to the existence of the minutes. The plaintiffs invite us, therefore, to speculate about the minutes. We decline to do so.

C

Finally, the plaintiffs argue that they are entitled to damages for breach of contract equal to the loss of the benefit of their bargain. For the same reasons that the court did not award specific performance, i.e., there was no agreement or contract, there can be no damages for breach of a contract that did not exist.

For the foregoing reasons, the court properly rendered judgment in favor of the corporation on the plaintiffs' amended complaint.

II

The plaintiffs' second claim is that the court abused its discretion in failing to award injunctive relief requiring that the city remove the improvements from their real property.[5] We are not persuaded.

[5] The city did not file a brief or appear for oral argument on this claim. We therefore considered only the court's memorandum of decision and the plaintiffs' brief and oral argument.

"[T]he governing principles for our standard of review as it pertains to a trial court's discretion to grant or deny a request for an injunction [are]: A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of the law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand." (Internal quotation marks omitted.) *Kelo* v. *New London*, 268 Conn. 1, 89, 843 A.2d 500 (2004), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005).

In their brief, the plaintiffs argue that they permitted the city to construct improvements on their land pursuant to the representations of the corporation's agents that the small parcel would be sold to them. If the representations of the corporation's agents were false or inaccurate, the plaintiffs argue, their authorization for the improvements to their land was obtained improperly and was not effective. The plaintiffs reason, therefore, that if the corporation is not compelled to convey the small parcel to them, the improvements the city constructed on their land must be removed at the expense of the city or the corporation.

On the basis of our review of the record, including the court's memorandum of decision, and the plaintiffs' briefs and argument, we conclude that the court properly found that there was no agreement between the plaintiffs and the corporation for the sale of the small parcel and that the improvements were constructed on the plaintiffs' land pursuant to an agreement between the city and the plaintiffs. The court, therefore, properly

denied the plaintiffs the equitable relief they were seeking.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] When counsel for the plaintiffs commenced his oral argument before us, he asked that the fifth count, which the trial court dismissed, be remanded for disposition as there was nothing in the record to support the dismissal. The plaintiffs failed to seek an articulation of the court's dismissal, and, consequently, the record is inadequate for our review. See *Lowe* v. *Lowe*, 47 Conn. App. 354, 362–63, 704 A.2d 236 (1997). Furthermore, the plaintiffs failed to mention the dismissal in the procedural history of their brief; see Practice Book § 67-4; and failed to brief the claim. We therefore decline to afford it review. See *In re Christina M.*, 90 Conn. App. 565, 584, 877 A.2d 941 (2005), aff'd, 280 Conn. 474, 908 A.2d 1073 (2006).