SOFIA TSIONIS ET AL. *v.* RICHARD MARTENS
(AC 29835)

McLachlan, Harper and Schaller, Js.

Argued January 13—officially released August 18, 2009

*Daniel H. Kryzanski,* for the appellants (plaintiffs).

*John A. Pinheiro,* with whom, on the brief, was *Janice L. Rosenfeld,* for the appellee (defendant).

*Opinion*

HARPER, J. The plaintiffs, Sofia Tsionis and John Tsionis, appeal from the judgment of the trial court rendered in favor of the defendant, Richard Martens. On appeal, the plaintiffs claim that (1) the court improperly determined that a contract existed between the parties and (2) in the alternative, if a contract did exist, then the court improperly determined that the contract was not terminated under the mortgage contingency clause. We affirm the judgment of the trial court.[1]

The following facts and procedural history were found by the court in its memorandum of decision. The defendant is a licensed home improvement contractor. He was residing in a single-family dwelling in Easton (property) while he refurbished and fixed the property for sale. During the summer of 2004, the defendant listed the property for sale with an asking price of $840,000. At that time, the property had an unfinished detached garage, and no certificate of occupancy had been issued for the garage.

---

[1] The plaintiffs also claim on appeal that the court improperly found in favor of the defendant on his counterclaim and awarded him damages. Those two claims rest solely on the plaintiffs' argument that either there was no contract or, if there was a contract, that the contract was terminated under the mortgage contingency clause. Because we affirm the judgment of the trial court, we need not consider these two claims any further.

The plaintiffs were in the process of selling their home to Norwalk Hospital. As part of the plaintiffs' commitment to sell their home, Norwalk Hospital deposited $54,500 into an interest bearing account. The account was under the control of Lawrence Denin, an attorney with the law firm, Lovejoy and Rimer, P.C. As a result of the upcoming sale to Norwalk Hospital, the plaintiffs were interested in purchasing a new home. Shortly after the defendant listed the property for sale, the plaintiffs viewed the property and entered into negotiations with the defendant concerning the purchase of the property. The plaintiffs agreed to purchase the property at the asking price but wanted the recreation area located on the second floor of the garage to be completed prior to closing. The parties signed a binder on August 2, 2004, reflecting a purchase price of $840,000.

On August 4, 2004, the defendant's attorney sent copies of a proposed contract to the plaintiffs' attorney. The proposed contract was a "Bar Association Standard Form Residential Real Estate Agreement." In the proposed contract, reference is made to a deposit in the amount of $54,000 and a purchase price of $840,000. The proposed contract provided in relevant part for no mortgage contingency. Neither party signed the proposed contract. After further negotiations were held concerning the garage space, the defendant agreed to complete the construction requested by the plaintiffs for an additional cost of $20,000. The defendant agreed under the condition that the $20,000 was added to the purchase price.

On August 19, 2004, the plaintiffs' attorney sent a revised contract (revised contract), with the plaintiffs' signatures affixed thereto, to the defendant's attorney. The revised contract consisted of the proposed contract with additions and deletions therein. The additions to the revised contract were typewritten, and the deletions

were reflected by lines crossing out text. The revised contract contained substantial changes from the proposed contract. The cover letter accompanying the revised contract noted the following changes: (1) a change in the purchase price to reflect $860,000; (2) an assignment to the defendant's attorney of the check made out by Norwalk Hospital and held in an interest bearing account for the plaintiffs, in the amount of $54,500; (3) an extension of the closing date from September 19 to 30, 2004; (4) a change of the inspection and notification dates regarding the physical structure of the property; (5) a paragraph, which stated that the agreement was not contingent on a written commitment for a loan, was deleted and replaced with a rider that provided the terms for a mortgage contingency clause; and (6) two paragraphs were deleted and replaced with a rider that provided language as to work to be done on the property prior to closing. The cover letter also stated that a check in the amount of $54,500 was enclosed. As noted previously, however, the revised contract stated that the deposit was being held by Lovejoy and Rimer, P.C., and was assigned to the defendant's attorney.

The court found that the parties were in dispute concerning the events that occurred on August 26, 2004. The defendant maintained that on that date, he signed the revised contract without making any additional changes. The defendant's attorney testified that on the same day, he faxed and mailed the revised contract, fully executed, to the plaintiffs' attorney at 3:10 p.m. The 3:10 p.m. time appears on the cover sheet of the facsimile but not on the revised contract itself. The defendant's attorney testified that after the revised contract was faxed to the plaintiffs' attorney, he received a cancellation letter from the plaintiffs' attorney via facsimile approximately fifteen minutes later. The cancellation letter stated that the plaintiffs decided not to

purchase the property. It further stated: "Please consider this letter as formal notice that the deal has fallen through." The face of the cancellation letter indicated a 3:22 p.m. time. In response to the defendant's testimony, the plaintiffs' attorney testified that he faxed the cancellation letter prior to receiving the revised contract with the defendant's signature affixed thereto.

In its memorandum of decision, the court found that the revised contract was fully executed when the defendant's attorney faxed the revised contract to the plaintiffs' attorney on August 26, 2004. It noted that Sofia Tsionis testified that she did not sign the revised contract. The court did not find her testimony credible. Furthermore, the court noted that the plaintiffs testified that the cancellation letter sent by their attorney to the defendant on August 26, 2004, by which they declared their intent not to purchase the property, was received by the defendant before the plaintiffs received the completed revised contract. The court also did not find this testimony credible. In addition, the court noted that the plaintiffs did not dispute the defendant's response to the cancellation letter, in which the defendant's counsel stated that he was surprised to receive a cancellation immediately after the facsimile of the revised contract. As a result, the court found that a contract existed when the defendant faxed the revised contract with his signature affixed thereto and that the plaintiffs' cancellation letter was sent after the defendant's facsimile of the revised contract to the plaintiffs' attorney. Therefore, the plaintiffs attempted to cancel the real estate sale after the revised contract was executed.[2]

The following day, August 27, 2004, the defendant's attorney responded to the cancellation letter. In a letter,

[2] The court found that the cancellation letter "constituted a breach of contract by [the plaintiffs], and that the defendant . . . may recover damages flowing from that breach." The plaintiffs raise no claim on appeal concerning the court's holding that the cancellation letter constituted a breach of contract.

he stated: "I was surprised to see that immediately after my faxing to you of the signed contracts yesterday to receive your correspondence stating 'your clients have decided not to purchase the referenced property.' " A copy of that letter was sent, without comment, to the father of one of the plaintiffs.

During that time, the defendant's attorney was not in possession of any moneys from the deposit referenced in the revised contract. On September 3, 2004, the defendant's attorney wrote to Lovejoy and Rimer, P.C., the law firm holding the deposit check from Norwalk Hospital. He requested that the deposit referenced in the revised contract either be sent to him or retained by the firm. He further requested that the deposit not be returned to the plaintiffs.

Although the cancellation letter stated that the plaintiffs were not going to purchase the property, the plaintiffs subsequently proceeded to obtain a letter from a mortgage broker. The letter stated that their mortgage application had been denied. On September 14, 2004, the plaintiffs' attorney wrote to the defendant's attorney claiming that no contract existed. Furthermore, the plaintiffs' attorney seemingly argued that if a contract did exist, the plaintiffs had not satisfied the mortgage contingency clause. He also stated that the contract would not be executed. In November, 2004, after the performance time under the revised contract had passed, the defendant relisted the property for sale. He sold the property in April, 2005, for $810,000.

In early 2005, the plaintiffs filed a four count complaint. The complaint alleged negligent misrepresentation, tortious interference, a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and negligent infliction of emotional distress. In response, the defendant filed a special defense and a counterclaim, both of which alleged

breach of contract. After a court trial, on March 31, 2008, the court issued a memorandum of decision finding in favor of the defendant on the plaintiffs' complaint and the defendant's counterclaim.[3] This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs claim that the court improperly determined that a contract existed. Specifically, the plaintiffs assert that there was no meeting of the minds as to the terms of the contract because the terms that were substantially modified in the revised contract did not have initials or signatures assenting to the changes. We are unpersuaded.

As previously stated, the court reviewed the revised contract, which was in writing and had the signatures of all the parties affixed thereto. In its memorandum of decision, the court found that the revised contract was fully executed when the defendant's attorney faxed the revised contract to the plaintiffs' attorney on August 26, 2004. It noted that Sofia Tsionis testified that she did not sign the revised contract. The court did not find her testimony credible. Furthermore, the court noted that the plaintiffs testified that the cancellation letter sent by their attorney to the defendant on August 26, 2004, by which they declared their intent not to purchase the property, was received by the defendant before the plaintiffs received the completed revised contract. The court also did not find this testimony credible. In addition, the court noted that the plaintiffs did not dispute the defendant's response to the cancellation letter, in which the defendant's counsel stated that he was surprised to receive a cancellation immediately after the facsimile of the revised contract. As a result,

---

[3] On appeal, the plaintiffs do not contest the court's ruling on their complaint.

the court found that a contract existed when the defendant faxed the revised contract with his signature affixed thereto and that the plaintiffs' cancellation letter was sent after the defendant's facsimile of the revised contract to the plaintiffs' attorney. Therefore, the plaintiffs attempted to cancel the real estate sale after the revised contract was executed.

As a preliminary matter, we begin by setting forth our standard of review. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 238, 907 A.2d 1274 (2006).

In the present case, the court reviewed the timing of the correspondence between the plaintiffs and the defendant to determine whether a contract existed. It found that before the plaintiffs attempted to cancel the deal, the defendant had already executed the revised contract. The plaintiffs do not dispute the court's findings. On appeal, the plaintiffs claim that there was no meeting of the minds as to the written terms of the revised contract. Specifically, the plaintiffs argue that because there was no expressed assent, such as an initial or signature, to the modifications made in the revised contract, the parties did not have a meeting of the minds.

"In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . . [A]n agreement must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 302, 912 A.2d 1117 (2007). Furthermore, "[w]hether the parties to a contract intended to modify the contract is a question of fact. . . . The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witness." (Citation omitted; internal quotation marks omitted.) *Torgerson* v. *Kenny*, 97 Conn. App. 609, 616, 905 A.2d 715 (2006), cert. denied, 281 Conn. 913, 916 A.2d 54 (2007). "For a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense. . . . Modification of a contract may be inferred from the attendant circumstances and conduct of the parties." (Internal quotation marks omitted.) Id.

In the present case, the court found that an enforceable contract existed. Our review of the entire record reveals that although the plaintiffs raised this argument before the court, the court made no express findings as to whether the parties had a meeting of the minds. Nonetheless, for the court to find that a contract existed, it had to find that a meeting of the minds existed. See *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, supra, 99 Conn. App. 302. In light of the fact that a

contract existed in written form that was signed by both parties, the plaintiffs' argument that a meeting of the minds did not occur is contrary to the evidence provided to the court.

Furthermore, the plaintiffs have provided no authority that stands for the proposition that a signature or initial of both parties is required on contract modifications for the contract to be enforceable.[4] On the basis of the record before us, including the findings made by the court, the court properly found that a contract existed.

II

The plaintiffs next claim that if a contract existed, the court improperly found that the contract was not terminated under the mortgage contingency clause. Specifically, the plaintiffs assert that they provided notice to the defendant via a letter from their mortgage broker stating that the plaintiffs' mortgage application had been denied. As a result, the plaintiffs argue, the mortgage contingency clause terminated the existence of a contract. We are unable to review this claim.

The following additional facts are necessary to our resolution of this issue. The contract contained a mortgage contingency clause, which read in relevant part: "This [a]greement is contingent upon the [p]urchaser obtaining a commitment for a loan to be secured by a first mortgage on the premises . . . subject to such terms, conditions and charges as are imposed by any lending institution where the [p]urchaser makes application. The purchaser agrees to make immediate application for such loan and pursue such application with diligence. In the event such commitment is not obtained

---

[4] We note that "[p]arties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated." (Internal quotation marks omitted.) *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, supra, 98 Conn. App. 239.

by the [p]urchaser on or before September 15, 2004, the [p]urchaser must cause notice of [p]urchaser's inability to obtain such commitment to be given to the [s]eller . . . ."

In its memorandum of decision, the court found that after the plaintiffs told the defendant that they were not going through with the purchase of the defendant's property, the plaintiffs proceeded to obtain a letter from their mortgage broker that stated that the mortgage application had been denied. The court noted that the plaintiffs did not produce a denial letter from a lending institution, nor did they present paperwork indicating that a mortgage application was received or processed on their behalf. The court did not make any further reference to the mortgage contingency clause in the remainder of the opinion. Essentially, the only finding made by the court is its explicit reference to the lack of evidence produced. The only evidence produced by the plaintiffs in relation to the mortgage contingency clause was a letter from their mortgage broker stating that the mortgage application had been denied. The plaintiffs claim that the court improperly found that the letter obtained from their mortgage broker did not terminate the contract. The plaintiffs assert that the mortgage contingency clause did not require them to file an application with a lending institution, as opposed to a mortgage broker. They also assert that the mortgage contingency clause only required them to file an application and to pursue that application with diligence. Other than a reference to the plaintiffs' failure to produce certain documents, however, the court never addressed the mortgage contingency clause in its opinion.

We carefully have reviewed the record in this case, and it does not contain a transcript of the March 31, 2008 trial. We are left with uncertainty as to whether this claim was sufficiently raised before the court. In addition, in the memorandum of decision, the court

never addressed whether the letter from the mortgage broker constituted notice and whether such notice terminated the contract under the mortgage contingency clause. If the plaintiffs wanted the court to address this issue, they could have sought an articulation pursuant to Practice Book § 66-5. "[I]t is the appellant's responsibility to provide an adequate record for review." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 74, 699 A.2d 101 (1997). Without an articulation, we would be forced to engage in speculation concerning findings that the court never made and consider a claim that the court never addressed in its memorandum of decision. Further, as noted previously, without a transcript of the trial, we are unable to determine whether the issue was considered by the court, and, if the issue was raised, to what extent the court considered or discussed the issue during trial. See *Misata* v. *Con-Way Transportation Services, Inc.*, 106 Conn. App. 736, 744–45, 943 A.2d 537 (2008). Accordingly, on the basis of this inadequate record, we cannot conclude that the court improperly determined an issue that was not fully addressed in its memorandum of decision.

The judgment is affirmed.

In this opinion the other judges concurred.