RAYMOND STEWART *v.* COLLEEN KING ET AL.
(AC 30736)

Flynn, C. J., and Lavine and West, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 16, 2009—officially released May 11, 2010

*Raymond Stewart*, pro se, the appellant (plaintiff).

*Robert W. Lynch*, for the appellees (defendants).

*Opinion*

WEST, J. The plaintiff, Raymond Stewart, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants, Colleen King and Cecil King.[1] On appeal, the plaintiff claims that the court improperly (1) failed to impose a resulting trust in his favor, (2) failed to find that the defendants

---

[1] The plaintiff is the son of Colleen King and the stepson of Cecil King.

were unjustly enriched at his expense, (3) failed to find that he was entitled to damages on the theory of quantum meruit and (4) denied his request for an order allowing him to reenter the defendants' real property and to retrieve his personalty. We affirm the judgment of the trial court.

The following findings of fact by the court and procedural history are relevant to the disposition of the plaintiff's appeal. On February 17, 1994, the defendants acquired, by warranty deed, a parcel of land located at 275 Bear Hill Road in Bethany. Colleen King paid the entire purchase price of $68,000 for the land. The plaintiff attended the closing and served as a witness to the conveyance but contributed no money toward the purchase price of the land.[2] At the time of the purchase, the defendants were living in Tennessee. The plaintiff was a residential home builder. In 1994, prior to the transfer, the plaintiff and the defendants discussed an arrangement in which the plaintiff would build a dwelling on the land. The cost of the construction was to be borne by both the plaintiff and the defendants, but no agreement was reached as to how the expenses were to be allocated. It also was part of the arrangement that the plaintiff and the defendants were all to live in the home together.

The plaintiff started construction of the dwelling in 1995. In 1998, although the dwelling was still under construction, the defendants sold their home in Tennessee and moved into the unfinished Connecticut dwelling. From 1998 until 2002, the defendants and the plaintiff lived together on the second floor of the dwelling, while the plaintiff continued construction of the first floor. In 2003, with construction of the first floor

---

[2] The land was conveyed to the defendants by warranty deed as joint tenants and "unto the survivor of them and unto such survivor's heirs and assigns forever."

substantially completed, the defendants moved downstairs, and the plaintiff remained on the second floor. Through 2005, the plaintiff continued to make improvements to the dwelling,[3] to maintain the landscaping as well as to carry out the snow removal.

From the time the parties had moved into the dwelling, Colleen King paid virtually all of the costs of the insurance, taxes, heating fuel and maintenance of the house. She also continued paying considerable sums of money toward the ongoing construction of the dwelling. In August, 2005, the plaintiff's girlfriend and the girlfriend's daughter moved into the dwelling. They lived with the plaintiff and his son on the second floor. Soon after, Colleen King complained to the plaintiff about her bearing all the costs of maintaining the house. A dispute over the plaintiff's failure to pay the property taxes that were due on July 1, 2006, resulted in Colleen King's bringing a summary process action against the plaintiff and his girlfriend, and, as a consequence, they were evicted in October, 2006.

The plaintiff commenced this action in December, 2006, and in his amended seven count compliant alleged that a resulting trust had arisen by operation of law based on the arrangement between him and Colleen King in 1994. The plaintiff also alleged, inter alia, that the defendants were unjustly enriched at his expense, that he was entitled to damages in excess of $200,000 for the value of materials and his services rendered in construction of the dwelling on a theory of quantum meruit, and he sought an order allowing him to reenter the property to retrieve personalty the defendants allegedly had converted. After a trial to the court, judgment was rendered in favor of the defendants on all counts. This appeal followed. Further facts will be set forth as necessary.

---

[3] In 2003, the plaintiff started construction of an addition to the home. At the time the court rendered judgment, the addition remained unfinished.

I

First, the plaintiff claims that the court improperly failed to impose a resulting trust in his favor. Specifically, he argues that the court improperly found that he had failed to prove that a resulting trust had arisen by operation of law on the basis of the 1994 arrangement because at the time the arrangement was made by agreement, it was the intent of the parties for the property to be conveyed to him upon Colleen King's death. We disagree.

"When property has been acquired and maintained under circumstances that make it inequitable for the holder of the legal title to retain the entire beneficial interest, equity converts him into a trustee. . . . The parties would, under these circumstances, share the property in proportion to the contribution of each to the purchase price. . . . When the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust ordinarily arises at once, by operation of law, in favor of the one paying the money. . . . The party seeking to impose the resulting trust need only show that the purchase money was paid by him and legal title was taken in another to gain the benefit of the presumption." (Citations omitted; internal quotation marks omitted.) *Saradjian* v. *Saradjian*, 25 Conn. App. 411, 414, 595 A.2d 890 (1991).

"The existence of a resulting trust is an issue of fact. . . . Intent is also a question of fact to be determined by the trier of fact from the evidence that it finds to be credible. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . In reviewing the trial judge's factual findings, we give the evidence the most favorable reasonable construction in support of the judgment. . . . We may reject a factual conclusion of the trial court only if it

is clearly erroneous. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion to determine whether it is legally correct and factually supported. . . . It is often stated that [a] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 415–16. We conclude that the court's finding was not clearly erroneous.

The court, in its memorandum of decision filed September 17, 2008, found that the real property was purchased on February 17, 1994, by the defendants, transferred to them by warranty deed as joint tenants and that the plaintiff was present at the closing. The court also found that Colleen King paid the full purchase price of the land of approximately $68,000 on February 17, 1994, and that the plaintiff, at that time, was unable to work and had financial liabilities that eventually led to his bankruptcy. The court further found that, although the plaintiff testified that he contributed $40,000 into a joint account with Colleen King for the construction of the house, that contribution was not supported by any evidence or documentation before the court. Last, the court found that the 1994 title conveyance to the defendants did not establish that the real estate was to pass to the plaintiff upon Colleen King's death, as he had alleged. The court concluded that the plaintiff had failed to establish by a preponderance of the evidence that a resulting trust had arisen in his favor.

On appeal, the plaintiff claims that the court's finding was clearly erroneous because the evidence at trial established that a resulting trust arose by operation of

law at the time that the defendants had purchased the real property. This is so, he contends, because he and the defendants had agreed orally, at the time of the transfer of the real property in 1994, that the defendants would purchase the land, that he would construct a dwelling on the land, that the parties would cohabit in the dwelling during the lifetime of Colleen King and, that following her death, the land would pass to the plaintiff. Furthermore, the plaintiff claims that because of concern over his shaky financial situation at the time of the defendants' purchase of the real property, legal title was taken in the defendants' names only. We do not agree.

On the basis of our review of the record, we conclude that the court's legal and factual conclusions are not clearly erroneous because they are amply supported by the evidence. See *Cavanaugh* v. *Richichi*, 100 Conn. App. 466, 470, 918 A.2d 290 (2007). The plaintiff's claim that the court improperly failed to impose a resulting trust is without merit.

## II

Next, the plaintiff claims that the court improperly failed to find that the defendants were unjustly enriched at his expense. We disagree.

"[W]herever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed. . . . Under such circumstances, the basis of the plaintiff's recovery is the unjust enrichment of the defendant. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of

circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

"[E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . Our Supreme Court has described unjust enrichment as a very broad and flexible equitable doctrine. . . . That doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did [the party liable], to the detriment of someone else, obtain something of value to which [the party liable] was not entitled? . . . Review of a trial court's resolution of that question is deferential. The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Jay* v. *A & A Ventures, LLC*, 118 Conn. App. 506, 516–17, 984 A.2d

784 (2009). With those principles in mind, we turn to the plaintiff's claim.

In his amended complaint, the plaintiff alleged that the defendants had been unjustly enriched by virtue of his investment of time, labor and money in constructing the dwelling and by their failure to abide by their arrangement. The plaintiff bases this claim on the alleged 1994 arrangement concerning the land and his subsequent construction of the dwelling. The court, however, found that the arrangement set out by the parties in 1994 did not constitute a contract because it was based on an oral understanding, which was indefinite and uncertain as to its terms and requirements and left many essential matters open for further consideration. See *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 302, 912 A.2d 1117 (2007) (agreement must be definite and certain as to terms and requirements). The court concluded that because the plaintiff alleged that the defendants were unjustly enriched as a result of their not abiding by an arrangement that it found not to have existed, the plaintiff had failed to establish unjust enrichment. Moreover, the court also found that the plaintiff had failed to establish the amount and basis of his claim of his investment of his time, labor and money by which the defendants allegedly were unjustly enriched. We agree. On the basis of the record before us, we conclude that the court's finding that the defendants were not unjustly enriched was not clearly erroneous.

## III

Next, the plaintiff claims the court improperly failed to find that he was entitled to damages on the theory of quantum meruit. We disagree.

"[Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no

express contract has been entered into by the parties. . . . A determination of a quantum meruit claim requires a factual examination of the circumstances and of the conduct of the parties . . . that is not a task for an appellate court [but rather for the trier of fact]. . . . This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken." (Internal quotation marks omitted.) *Schreiber* v. *Connecticut Surgical Group, P.C.*, 96 Conn. App. 731, 737, 901 A.2d 1277 (2006).

"Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. . . . The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." (Internal quotation marks omitted.) *Total Aircraft, LLC* v. *Nascimento*, 93 Conn. App. 576, 582 n.5, 889 A.2d 950, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006).

Here, the court found that the evidence adduced at trial did not support the conclusion that Colleen King's course of conduct implied a promise to pay the plaintiff for the services he rendered in constructing and maintaining the dwelling. Moreover, the court also found that the plaintiff had failed to sustain his burden of proof as to the basis of his claim for and value of the materials and services that he sought to recover from the defendants. On the basis of the record, we conclude that the court's finding that the plaintiff is not entitled to damages under a theory of quantum meruit is not clearly erroneous.

## IV

Last, the plaintiff claims that the court improperly denied his request for an order allowing him to reenter the defendants' real property and to retrieve his personalty. We disagree.

Essentially, the plaintiff claims that the evidence adduced at trial established that the defendants had converted his personalty to their own use, and, therefore, the court improperly denied his request for an order allowing him to reenter the dwelling to retrieve it. The plaintiff contends that his own uncontroverted testimony, as well as that of his girlfriend, established a prima facie case of conversion.[4] Effectively, the plaintiff is claiming that had the court properly credited the uncontroverted testimony, it would have concluded that the defendants indeed had converted his personalty. The court, however, was free to discredit even uncontroverted testimony.[5] See *Blum* v. *Blum,* 109 Conn. App. 316, 329–30, 951 A.2d 587 (because trial court is sole arbiter of witness credibility, it has discretion to reject even uncontested evidence), cert. denied, 289 Conn. 929, 958 A.2d 157 (2008) Moreover, "[i]t is within the province of the trial court . . . to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must

[4] To establish a prima facie case of conversion, the plaintiff had to demonstrate that (1) the material at issue belonged to the plaintiff, (2) that the defendants deprived the plaintiff of that material for an indefinite period of time, (3) that the defendants' conduct was unauthorized and (4) that the defendants' conduct harmed the plaintiff. See *News America Marketing In-Store, Inc.* v. *Marquis,* 86 Conn. App. 527, 545, 862 A.2d 837 (2004), aff'd, 276 Conn. 310, 885 A.2d 758 (2005).

[5] We note that the court made no express credibility determination involving either the plaintiff's testimony or his girlfriend's testimony. The court's ruling on the plaintiff's claim of conversion, however, includes implicit findings that it resolved any credibility determinations and issues involving the testimony in a manner that supports its ruling. See *RYA Corp.* v. *Planning & Zoning Commission,* 87 Conn. App. 658, 667, 867 A.2d 97 (2005).

be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 728, 941 A.2d 309 (2008). Accordingly, we reject the plaintiff's argument.

The judgment is affirmed.

In this opinion the other judges concurred.