# STEPHEN SHELTON ET AL. *v.* FEMI OLOWOSOYO ET AL.
## (AC 31413)

Gruendel, Flynn and Pellegrino, Js.

Argued September 20—officially released November 30, 2010

*Brendan J. O'Rourke,* for the appellants-appellees (defendants).

*Joseph A. Kubic,* for the appellees-appellants (plaintiffs).

*Opinion*

PELLEGRINO, J. The defendants, Femi Olowosoyo[1] and Starlight Construction Company, Inc., appeal from the judgment rendered after a court trial, arising from a home construction contract with the plaintiffs, Stephen Shelton and Elizabeth Shelton, denying relief on all claims and counterclaims. On appeal, the defendants claim that the court improperly found that the payment terms of the contract had been modified based on the parties' actions and that it failed to award damages. On cross appeal, the plaintiffs claim that the court improperly found that (1) they could not enforce the third amended completion date, (2) they were not entitled to damages and (3) the defendants had not been unjustly enriched. We affirm the judgment of the trial court.

The court found the following facts. In approximately 2003, the plaintiffs met with John Mastera, an architect, to consider renovating their house located at 16 Compo Road North in Westport. After a series of meetings with Mastera, the plaintiffs decided to demolish their home at the property and build a new house. By June, 2004,

---

[1] Olowosoyo is the founder and president of the defendant Starlight Construction Company, Inc.

Mastera had prepared drawings and had given the plaintiffs an estimated project cost of $580,000, including fees. Because the plaintiffs intended to utilize a construction loan in the amount of $580,000, they could not afford a bid of $580,000 that did not include the kitchen and architectural fees. Eventually, they decided to alter the initial plans to reduce costs and, on September 4, 2004, entered into a contract with the defendants to build the home for a fixed price of $450,000. They executed the contract again on April 1, 2005. The contract was an "at cost" contract, meaning that the defendants would not realize a profit. The price negotiated included all labor and materials but did not include costs for the kitchen, driveway and architectural fees.[2]

The contract initially provided for an estimated completion four months from the start date, and it included a payment schedule that obligated the plaintiffs to make the following payments: one third, or $150,000, as a retainer; one third, or $150,000, at the "commencement of the framing"; one sixth, or $75,000, at the "completion of the drywall"; and the remaining balance of $75,000 upon the completion of the project. Prior to signing the contract, the plaintiffs informed the defendants that a construction loan would be the source of their payments. After the contract had been signed, the plaintiffs learned of the draw schedule on their construction loan and, subsequently, informed the defendants as to the schedule, effectively putting the defendants on notice that the plaintiffs might not be able to follow the payment terms of the contract insofar as they failed to coincide with the terms of the draw schedule.

Although the contract stipulated that the first payment would be for $150,000, the first draw was for

---

[2] Adherence to the payment schedule was necessary in order for the defendants to have sufficient funds to obtain the necessary labor and materials to undertake and to complete the project in accordance with the parties' agreement.

$112,000 and, on September 22, 2004, the plaintiffs paid $90,000 to the defendants. The defendants accepted the plaintiffs' nonconforming payment and began working two months later, in November, 2004.[3] In December, 2004, the town of Westport issued a cease and desist order because the defendants had begun work without obtaining the necessary permit authorizing demolition of the house. It was not until January 28, 2005, that the town finally issued a building permit authorizing the demolition of the house.

In March, 2005, the plaintiffs paid to the defendants $25,265 for additional change orders to remove trees, to install a new water meter, to clean the " 'old septic' " tank, to reinforce the foundation wall by increasing its thickness, to comply with framing notes and to provide a fireplace vent kit. In April, 2005, the parties met after both the stipulated payment and completion dates had not been met. The defendants provided the plaintiffs with an amended completion date of August 2, 2005. In May, 2005, as the foundation was nearing completion, the plaintiffs received another draw on their bank loan and paid $53,800 to the defendants. At that point, including the aforementioned paid change order, a total of $166,065 had been paid to the defendants.

In July, 2005, Olowosoyo contacted the plaintiffs and stated that the defendants did not have the necessary financial resources to continue with the construction. In order to attain additional funds, the plaintiffs refinanced their home at 9 Cedar Road in Westport. On August 25, 2005, the plaintiffs paid to the defendants an additional $86,000. By that time, the foundation had been completed, work on the basement had commenced, and the plaintiffs had paid a total of $252,065. In August, 2005, the defendants provided the plaintiffs with a schedule

---

[3] The contract provided that the expected start date was to be two months from "contract acceptance."

with a second amended completion date of December 31, 2005. On March 29, 2006, after the second amended completion date had not been met, the parties agreed to a third amended completion date of May 31, 2006.

On May 16, 2006, Olowosoyo e-mailed the plaintiffs and acknowledged that the defendants' mistakes, the town's cease and desist order and financial issues had contributed to the failure to meet the agreed on completion dates. On June 5, 2006, the plaintiffs e-mailed the defendants, "insisting . . . that the exterior structure (framing, sheeting, windows) be completed by June 30, 2006." (Internal quotation marks omitted.) On July 12, 2006, after the deadline was not met, the plaintiffs unilaterally terminated the contract. In July, 2006, the plaintiffs hired Shoreline Builders, Inc. (Shoreline), to weatherproof the house. Shoreline was paid a total of $101,000 to complete the framing, to install the roof and additional sheathing and to replace rotted or weather-damaged wood. After Shoreline finished that work, the plaintiffs sold the property for $700,000.[4]

On December 11, 2006, the plaintiffs commenced this action against the defendants in a five count complaint alleging breach of contract; violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; piercing of the corporate veil; conversion; and unjust enrichment.[5] In response, the defendants filed an amended answer, special defenses and a five count counterclaim alleging breach of contract, promissory estoppel, fraud, unjust enrichment and a claim for a setoff pursuant to Practice Book § 10-54.

[4] The parties dispute whether the plaintiffs realized a profit or loss on the sale of the property, but the court made no finding of fact on that issue.

[5] The operative third amended complaint was filed on February 19, 2009, and included a fifth cause of action for conversion and a new sixth count seeking attorney's fees pursuant to General Statutes § 42-150bb. On appeal, the plaintiffs have not pursued their claims alleging violation of CUTPA, piercing of the corporate veil and conversion.

The case was tried before the court over six days in December, 2008. The court found that the parties voluntarily had modified or waived the terms of the contract and that none of the parties were entitled to recover on any of their claims or counterclaims. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

I

The defendants claim that the court improperly interpreted the contract when it found that the payment provisions of the contract had been modified based on the parties' actions. We disagree.

We begin by setting forth our standard of review. "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . The court, as the sole arbiter of credibility, is free to accept or reject, in whole or in part, the testimony offered by either party." (Citation omitted; internal quotation marks omitted.) *Blacker* v. *Crapo*, 112 Conn. App. 795, 804–805, 964 A.2d 1241, cert. denied, 291 Conn. 915, 970 A.2d 727 (2009).

"[W]hether the parties to a contract intended to modify the contract is a question of fact. . . . The resolution of conflicting factual claims falls within the province of the trial court. . . . For a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must

assent to the same thing in the same sense. . . . Modification of a contract may be inferred from the attendant circumstances and conduct of the parties." (Citation omitted; internal quotation marks omitted.) *Tsionis* v. *Martens*, 116 Conn. App. 568, 577, 976 A.2d 53 (2009).

The court, in its thorough memorandum of decision, found that although specific payment provisions were set out in the contract, the parties modified the terms of the contract. Early on, the plaintiffs made it clear to the defendants that they could only make payments in line with the draw schedule on their construction loan. The first payment of $90,000 failed to conform with the payment requirement in the contract. Nevertheless, the defendants accepted the plaintiffs' nonconforming payment and began demolition of the home two months later, as the contract stipulated. In May, 2005, the plaintiffs provided the defendants with a second payment for $53,800, bringing the total to $143,800, still several thousand dollars short of the contractually agreed retainer of $150,000. The defendants continued to work on the project. As the court found, it was not until July, 2005, that the payment schedule became an issue, at which time the plaintiffs refinanced their home and provided the defendants with another check in the amount of $86,000. Despite the plaintiffs' continued failure to conform to the terms of the contract, the defendants continued to work at the home.

As the court explained in its memorandum of decision, "[i]t is clear from the . . . conduct of the parties that the payment terms of the contract were modified. The parties' conduct evidences a mutual assent to modify the contract's payment terms in accordance with the construction loan's draw schedule. [The defendants] worked on the project for ten months before raising the issue of funding. Further, eight months after work commenced, the defendants were still not paid their full retainer under the original payment terms of the

contract. It was not until the end of August, 2005, that the defendants were paid their full retainer. . . . The defendants' failure to enforce the contract's original payment terms, and assent to being paid pursuant to the terms of the draw schedule clearly evidence that the parties agreed to modify the contract's original payment terms. Therefore, it cannot be said that the plaintiffs' failure to adhere to the contract's original payment terms is a material breach of the agreement." (Citation omitted.)

Additionally, the defendants' claim that they were entitled to damages is based on an interpretation of the original agreement that the trial court found and, we agree, was modified. Even if we are to ignore the modification of the payment schedule, which the defendants would have us do, the court found that there was no evidence that the defendants incurred costs beyond the payments they had received, which would be required to prove damages pursuant to an "at cost" agreement. We conclude that the court's findings pertaining to a modification of the payment terms of the contract find support in the evidence and, therefore, are not clearly erroneous.

II

On cross appeal, the plaintiffs claim that the court improperly found that (1) they could not enforce the third amended completion date, (2) they were not entitled to damages and (3) the defendants had not been unjustly enriched. We disagree.

As we previously stated, under the applicable standard of review, we uphold factual findings unless they are clearly erroneous. As the court elucidated in its memorandum of decision, the acts and conduct of the parties made it clear that the completion date provisions of the contract had been waived.

"Waiver involves an intentional relinquishment of a known right. . . . Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so. . . . Furthermore, whether a waiver has occurred is a factual question for the trier. . . . Thus, the inquiry in the present case is whether there was evidence from which the court reasonably could have found acts and conduct of the defendant consistent with waiver of the [completion date] provision." (Citations omitted; internal quotation marks omitted.) *Banks Building Co., LLC* v. *Malanga Family Real Estate Holding, LLC*, 102 Conn. App. 231, 239, 926 A.2d 1 (2007).

Although the contract imposed a completion date, the parties continued to work together and modified the completion date three times. As the court found, each time the defendants failed to meet the required completion date, the plaintiffs allowed them to continue working. Further, the plaintiffs failed to follow the agreed on payment schedule, which, according to the defendants, contributed to their failure to complete the project at the estimated completion dates. Accordingly, we conclude that the court's finding that the parties waived the completion date provisions of the contract is supported by the record and, therefore, is not clearly erroneous.[6]

Finally, the plaintiffs claim that the court improperly found that the defendants had not been unjustly

---

[6] The plaintiffs further claim that the court improperly determined that they were not entitled to damages as a result of the defendants' breach of the completion date provision of the contract. Because we conclude that the court properly found that the completion date provision of the contract was waived by the parties and, therefore, there was no breach by the defendants, we cannot conclude that the court improperly determined that the plaintiffs failed to prove that they were entitled to damages.

enriched by the plaintiffs' alleged overpayment. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Breen* v. *Judge*, 124 Conn. App. 147, 158–59, 4 A.3d 326 (2010).

The plaintiffs' construction expert, Bjorn Wisecup, testified that 28.9 percent of the work had been completed at the time the plaintiffs terminated the contract. The plaintiffs argue that the defendants, therefore, are only entitled to 28.9 percent of the agreed upon $450,000 construction price, or a total of $130,050. The plaintiffs argue that, because they paid a total of $229,800, they effectively overpaid and unjustly enriched the defendants by $99,750. They assert that this court should rely on Wisecup's testimony because the "reality is that [the] [d]efendants did not place into evidence any invoices, receipts or documents whatsoever evidencing costs and expenses for the [p]roject."

The plaintiffs also failed to provide the court with "receipts, appraisals or testimony regarding the value of the labor and materials expended on the project up until the point the contract was terminated . . . ." Furthermore, the plaintiffs failed to demonstrate that the defendants received any benefit beyond the labor and costs associated with the work performed. Even if we were to assume arguendo that 28.9 percent of the work had been completed, there is no evidence in the record as to how much the defendants spent on labor and materials. Without those figures, we are left to speculate as to whether the defendants were unjustly enriched by the plaintiffs' payments.

Because of the unique nature of this "at cost" contract, the court appropriately chose not to award damages using the mathematical formula advocated by the plaintiffs. The plaintiffs have failed to point us to any evidence in the record that would establish that the court improperly determined that the defendants were not unjustly enriched. Because the record lacks those findings of fact, we conclude that the court's determination that the plaintiffs failed to prove that the defendants were unjustly enriched was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.