ROBERT V. BREEN ET AL. *v.* CRAIG T. JUDGE
(AC 31157)

Bishop, Beach and West, Js.

Argued May 17—officially released September 28, 2010

*George M. Purtill*, for the appellants (plaintiffs).

*Christopher D. Hite*, for the appellee (defendant).

*Opinion*

BISHOP, J. This appeal stems from an action by the plaintiffs, Robert V. Breen and Susan Breen, to hold the defendant, Craig T. Judge, the managing member of Patriot Truck Equipment, LLC (Patriot), personally liable on a judgment previously recovered against Patriot. The plaintiffs, appealing from the judgment in favor of the defendant, claim that the court improperly (1) failed to pierce Patriot's corporate veil under either the identity rule or the instrumentality rule, (2) required proof of intent to defraud in order to find certain transfers of assets to be fraudulent under General Statutes § 52-552f (a) and (3) failed to find that the defendant

was unjustly enriched by the transfers he received from Patriot. We affirm the judgment of the trial court.

Following a court trial, the court, *Domnarski, J.*, issued a memorandum of decision that set forth the following relevant factual and procedural history. "Susan Breen was employed as a bookkeeper at Patriot from February, 2003, to March, 2004. Beginning in March, 2003, she deposited funds, which she had borrowed from credit card accounts in the name of [the plaintiffs], into Patriot's checking account. At the time Susan Breen made these deposits, Patriot was unable to pay its current liabilities, including vendor payments. She testified [that] she made these deposits to help Patriot avoid having to cease operation. Neither [the defendant], who was the managing member of Patriot, nor anyone else at Patriot solicited these deposits.[1] Patriot did acknowledge the deposits, which were carried on the books of Patriot as a loan from Susan Breen. She left employment at Patriot in March, 2004. In August, 2005, the plaintiffs . . . sued Patriot to recover the money they loaned, plus interest. . . . [O]n January 8, 2006, judgment entered in the plaintiffs' favor, against Patriot, in the total amount of $58,495.35.[2] . . . On May 14 and June 27, 2007, the plaintiffs conducted an examination of judgment debtor by examining [the defendant], who appeared as the representative of Patriot."

On November 8, 2007, the plaintiffs filed a complaint against the defendant, seeking to hold him personally liable on the judgment previously obtained against Patriot. The plaintiffs also alleged violations of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act, and General Statutes § 52-552a et seq., the Uniform Fraudulent Transfer Act (act), and stated

---

[1] The plaintiffs maintain on appeal that the defendant personally solicited the funds.

[2] This amount represented the outstanding balance of the loan, which was $22,842.47, plus reimbursement for credit card interest and charges.

a count sounding in unjust enrichment. The defendant denied the allegations and brought special defenses based on res judicata and equitable estoppel. Following a trial, the court, without addressing either of the special defenses, found in favor of the defendant on all counts. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court improperly denied their request to pierce Patriot's corporate veil in order to hold the defendant personally liable for the judgment against Patriot. Specifically, the plaintiffs claim that under either the instrumentality rule or the identity rule, the court should have found that the defendant had complete unity of interest with Patriot and should not be allowed to avoid liability. We are not persuaded.

The following additional facts, as found by the court, are relevant to the plaintiffs' claim. "Much of the evidence and testimony at trial concerned the books and records of Patriot, and money received by [the defendant] and his mother, Shirley Judge. Shirley Judge was a member of Patriot . . . for a period of time and made capital contributions to Patriot. She also performed bookkeeping services at Patriot for no salary. . . . Patriot was in the business of outfitting trucks with snow plows and truck bodies. Patriot commenced operation in January, 2002, and it filed articles of dissolution with the secretary of the state on September 16, 2005. At the trial, the accountant for Patriot and [the defendant], Michael Michaud, testified at length as to information contained in the tax returns filed by Patriot and [the defendant] for the years 2002 through 2005. The court found his testimony credible and of assistance."

The court noted that the defendant initially contributed $48,640 to the business and was a 50 percent shareholder of Patriot, with Brian Clark owning the

remaining 50 percent. In 2004, the defendant contributed an additional $52,144 to the business. By the end of 2004, the defendant was still a 50 percent shareholder of Patriot, but Clark was no longer a shareholder, and the defendant's mother had become a 50 percent shareholder. The court made findings regarding Patriot's gross receipts, total income after deducting costs of goods sold, and deductions from the total income for each year from 2002 to 2005. Between 2002 and 2004, Patriot's gross receipts and income grew each year, but the company still lost money.

The court also found that "[d]uring the time Patriot was in existence, [the defendant] worked at the business full-time as its managing member. While Patriot was in business, [the defendant] received money from Patriot in the form of draws and by way of payment of his personal expenses. These draws and personal expenses were noted on the books of the business. For each tax year, the amounts received by [the defendant], by way of draw or payment of personal expenses, were recharacterized as guaranteed payments to the partner. These payments were shown on the business tax returns and were carried over to [the defendant's] personal tax returns. These guaranteed payments served to reduce the losses that [the defendant] could claim on his personal return from Patriot's operations. The guaranteed payments to [the defendant] were as follows: for 2002, $23,619; for 2003, $41,686; for 2004 $38,486; and for 2005, $18,896."

In response to the plaintiffs' quest to pierce the corporate veil in order to hold the defendant personally liable for Patriot's debt to them, the court stated: "In applying the instrumentality test to the facts of this case, the court cannot find that [the defendant] exerted such control over Patriot that it had no existence of its own. As noted earlier, [the defendant] shared ownership of Patriot, at various times, with Clark and Shirley Judge.

The business did not exist only for [the defendant's] benefit but was a going business with average annual sales of approximately $660,000 for the four years it was in operation. Furthermore, Patriot kept books and records, filed tax returns and gave notice of its dissolution to the secretary of the state. . . .

"As to the identity test, the court is not persuaded that there was such unity of interest between [the defendant] and Patriot that Patriot's independence never began or ceased. This case does not present the exceptional circumstances that justify piercing the corporate veil."

Initially, we set forth our applicable standard of review. "Whether the circumstances of a particular case justify the piercing of the corporate veil presents a question of fact. . . . Accordingly, we review the trial court's decision whether to pierce [the] corporate veil under the clearly erroneous standard of review. (Citations omitted; internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 234, 990 A.2d 326 (2010).

"When determining whether piercing the corporate veil is proper, our Supreme Court has endorsed two tests: the instrumentality test and the identity test. The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty

must proximately cause the injury or unjust loss complained of." (Internal quotation marks omitted.) *Mountview Plaza Associates, Inc.* v. *World Wide Pet Supply, Inc.*, 76 Conn. App. 627, 633–34, 820 A.2d 1105 (2003).

"The identity rule has been stated as follows: If [the] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise. . . .

"Courts, in assessing whether an entity is dominated or controlled, have looked for the presence of a number of factors. Those include: (1) the absence of corporate formalities; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlapping ownership, officers, directors, personnel; (5) common office space, address, phones; (6) the amount of business discretion by the allegedly dominated corporation; (7) whether the corporations dealt with each other at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of debts of the dominated corporation; and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own. . . . The concept of piercing the corporate veil is equitable in nature. . . . No hard and fast rule, however, as to the conditions under which the entity may be disregarded can be stated as they vary according to the circumstances of each case. . . . Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice. . . . The improper use of the corporate form is

the key to the inquiry, as [i]t is true that courts will disregard legal fictions, including that of a separate corporate entity, when they are used for fraudulent or illegal purposes. Unless something of the kind is proven, however, to do so is to act in opposition to the public policy of the state as expressed in legislation concerning the formation and regulation of corporations." (Citations omitted; internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, supra, 295 Conn. 232–34.

Upon our review of the record, we conclude that the court's determination that the facts in this case did not present exceptional circumstances to justify piercing the corporate veil was not clearly erroneous. In analyzing the evidence under the instrumentality test, the court concentrated on the element of control. The court noted that the defendant was at no time more than a 50 percent owner of the limited liability company, with Clark and Shirley Judge also being 50 percent owners during certain periods of time. The court also noted that Patriot was a properly formed company doing business in the state. The court observed that Patriot followed certain corporate formalities, such as maintaining separate books, filing company tax returns and, subsequently, filing the appropriate dissolution documents with the secretary of the state. Although the company was ultimately unsuccessful, during the years that it was in operation, Patriot increased its annual sales each of the first three years it was in business. The court properly considered these facts as evidence that the defendant did not completely dominate Patriot and that Patriot was not a "mere shell, serving no legitimate purpose . . . ." (Internal quotation marks omitted.) Id., 233. Thus, under the instrumentality test, it was reasonable for the court to conclude that the defendant did not control Patriot to such an extent that it had "no separate mind, will or existence of its own . . . ." (Internal quotation marks

omitted.) *Mountview Plaza Associates, Inc.* v. *World Wide Pet Supply, Inc.*, supra, 76 Conn. App. 634.

Likewise, as to the identity test, the facts found by the court, as already noted, support its conclusion that there did not exist such "unity of interest and ownership" between Patriot and the defendant that the independence of the two had in effect ceased or had never begun. See *Naples* v. *Keystone Building & Development Corp.*, supra, 295 Conn. 232. Accordingly, we affirm the court's decision not to pierce the corporate veil.

## II

The plaintiffs next claim that the court improperly determined that they were required to prove intent to defraud in order to satisfy their claim that certain transfers of money to the defendant were constructively fraudulent in violation of § 52-552f (a). At trial, the plaintiffs claimed that the defendant transferred Patriot assets to, or for the benefit of, himself and did so in violation of the act. Specifically, the plaintiffs claimed that the transfers were fraudulent in violation of § 52-552e (a) (1) and (2) (A) and (B), and § 52-552f (a). Section 52-552e (a) (1) is the only section of the four raised by the plaintiffs that requires a showing of "actual intent to hinder, delay or defraud any creditor of the debtor . . . ." On appeal, the plaintiffs claim that the court improperly required them to prove actual intent under § 52-552f (a).[3] We disagree.[4]

---

[3] The plaintiffs also appear to claim, for the first time, in their principal brief that the transfers from Patriot to the defendant were fraudulent under § 52-552f (b), on the basis of their claim that the defendant was an insider. This claim was not made at trial. Because the plaintiffs did not claim a violation of § 52-552f (b) before the trial court, the court had no occasion to address it. "Because [appellate] review is limited to matters in the record, we will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 626 n.5, 972 A.2d 239, cert. denied, 293 Conn. 922, 980 A.2d 909 (2009). Accordingly, to the extent the plaintiffs now claim a violation of § 52-552f (b), we decline to address it.

[4] In the plaintiffs' reply brief, as well as at oral argument, the plaintiffs seem to claim that the court erroneously found that the payments received

In addressing the plaintiffs' fraudulent transfer claims, the court noted: "Considering all of the surrounding circumstances, and applying the required higher standard of clear and precise proof, the court cannot conclude that the payments made by Patriot to [the defendant] were made with the actual intent to hinder, delay or defraud the creditors of Patriot. The compensation [the defendant] received by way of payments does not appear to be excessive, and it does not establish a badge of fraud. . . . Although it may not be a good business practice for an owner-operator to pay himself or herself a reasonable and regular compensation when the business is not making a profit, it is not a fraudulent transfer if he or she does so. To hold otherwise could make any operator who received income from a failed business liable under the [act]. That is not the purpose of the act."

Initially, we set forth the applicable standard of review and the relevant statutory text. "[W]hether the court applied the correct legal standard is a question of law subject to plenary review." *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 598, 930 A.2d 768, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007). The law in question is

by the defendant were in the form of compensation. The plaintiffs argue, rather, that the payments were draws of capital, and because the defendant's capital account had a negative balance from 2003 onward, it was fraudulent for the defendant to make those withdrawals. This is a distinctly different claim from the one that was raised in the plaintiff's principal brief. "[I]t is a well established principle that arguments cannot be raised for the first time in a reply brief . . . ." (Internal quotation marks omitted.) *Warner* v. *Planning & Zoning Commission*, 120 Conn. App. 50, 64 n.11, 990 A.2d 1243, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). Accordingly, we do not address the claim that the court's factual finding was erroneous.

The plaintiffs also claimed, for the first time, during oral argument that in order to claim that certain transfers were not fraudulent on the ground that they were compensation, the defendant would have to have specially pleaded that as a defense. Accordingly, we do not address this claim. See *Breen* v. *Synthes-Stratec, Inc.*, 108 Conn. App. 105, 110 n.4, 947 A.2d 383 (2008) (claims cannot be raised for first time at oral argument before reviewing court).

§ 52-552f (a), which provides in relevant part: "A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

Upon review of the record, we conclude that the court applied the proper legal standard under § 52-552f (a) in assessing the fraud claim asserted by the plaintiffs. In its memorandum of decision, the court did not discuss separately each of the statutory subsections that the plaintiffs claimed were violated, and because the court did not clearly delineate which facts it considered in relation to each subsection, it is admittedly more difficult to discern the basis for the court's reasoning. It is amply clear, however, from the facts found by the court, that it considered the money received by the defendant to be reasonable compensation for his full-time management of the company. Unlike the alleged violation of § 52-552f (a), none of the violations of § 52-552e that were alleged by the plaintiffs require proof that the transfers were not for "reasonably equivalent value . . . ." General Statutes § 52-552f (a). The fact that the court gave considerable attention in its finding that the transfers were for compensation is clear evidence that the court separately considered the constructive fraud claim under § 52-552f (a). The court's decision certainly sets forth its finding that the plaintiffs had failed to establish proof of any intent to defraud on the part of the defendant, but the plaintiffs have not presented any basis for us to conclude that the court's discussion regarding intent also applied to its conclusions regarding the alleged violation of § 52-552f (a).[5]

---

[5] To the extent that the plaintiffs believe that the record is not clear as to the court's application of law, and specifically as to whether the court's statements regarding intent pertained to the claims of fraud and constructive

Accordingly, on the basis of the record provided to us, we cannot conclude that the court improperly required proof of fraudulent intent under § 52-552f (a).

### III

Finally, the plaintiffs claim that the court improperly found that the defendant was not unjustly enriched. Specifically, the plaintiffs claim that the court improperly required that, in order to prove unjust enrichment, they had to demonstrate that they directly conferred the alleged benefit on the defendant. We are not persuaded.

"We note at the outset that our analysis of whether the court applied the correct legal standard is a question of law subject to plenary review." *Wieselman* v. *Hoeniger*, supra, 103 Conn. App. 598. We next set forth the law regarding unjust enrichment. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly

---

fraud as well, it was the plaintiffs' responsibility to seek clarification through a motion for articulation. See *Thomas T. Lonardo, P.C.* v. *Dichello*, 121 Conn. App. 528, 533, 996 A.2d 758 (2010).

did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006).

"[E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . Our Supreme Court has described unjust enrichment as a very broad and flexible equitable doctrine. . . . That doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did [the party liable], to the detriment of someone else, obtain something of value to which [the party liable] was not entitled?" (Internal quotation marks omitted.) *Stewart* v. *King*, 121 Conn. App. 64, 71, 994 A.2d 308 (2010).

The plaintiffs base their assertion on the court's very brief discussion of their unjust enrichment claim. In its memorandum of decision, the court noted: "In the fifth count, the plaintiffs allege that the [defendant] has been unjustly enriched by funds received [from] the plaintiffs. The evidence shows that any moneys loaned by the plaintiffs were paid directly to Patriot and not [the defendant]. The plaintiffs have not sustained their burden as to this count." The plaintiffs claim that, by stating that the money was loaned to Patriot and not directly to the defendant, the court mistakenly held that the law requires a direct link between the plaintiffs and the defendant in order to find unjust enrichment. The plaintiffs contend that there is no such requirement under the law. In support of their claim, the plaintiffs refer to decisional law of the Superior Court, holding that there is no requirement that the benefit be incurred directly. See *Stefan* v. *P.J. Kids, LLC*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X01-CV-04-0185513-S (March 1,

2005). To the contrary, the defendant relies on Superior Court decisional law for the contention that unless a benefit is conferred by the plaintiff directly, there can be no action for unjust enrichment. See *Parker* v. *Colgate-Palmolive Co.*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-03-0193798-S (August 8, 2003); *Granito* v. *International Business Machines, Inc.*, Superior Court, judicial district of Tolland, Complex Litigation Docket, Docket No. X07-CV02-0080440-S (April 16, 2003) (34 Conn. L. Rptr. 485).

We agree with the parties that decisions of the Superior Court appear to be divided on this issue and that neither this court, nor our Supreme Court, has specifically addressed the question of whether an alleged benefit must be directly conferred on a defendant in order for a court to find that the defendant has been unjustly enriched. In this case, however, we need not join the issue, as it is not clear that the court rejected the plaintiffs' claim due to the lack of a direct link between the plaintiffs and the defendant or because the court simply did not find that the defendant received funds to which he was not entitled. Although the court stated that the loan was conferred to Patriot, not directly to the defendant, the court also opined, earlier in its decision, that the money received by the defendant was reasonable compensation for his work on behalf of Patriot. Thus, the court's comment about the absence of a direct payment from the plaintiffs to the defendant does not necessarily mean that the court was requiring that, in order for a defendant to benefit, he or she must receive the asset directly from the party conferring the benefit. In sum, because the court's analysis of this claim is limited and its conclusions regarding payments received by the defendant belie a claim of unjust enrichment, we cannot discern the precise basis for the court's decision. "Furthermore, it is axiomatic that the appellant must provide

this court with an adequate record for review. See Practice Book § 61-10. Indeed, [u]nder these circumstances, the [appellant] should have filed a motion for articulation to preserve an adequate record for review. See Practice Book §§ 61-10 and 66-5. It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Thomas T. Lonardo, P.C.* v. *Dichello*, 121 Conn. App. 528, 533, 996 A.2d 758 (2010). Accordingly, we cannot conclude that the court improperly applied an incorrect standard of law.

The judgment is affirmed.

In this opinion the other judges concurred.