WATERVIEW SITE SERVICES, INC. *v.* PAY DAY, INC.
(AC 30982)

DiPentima, C. J., and Robinson and Alvord, Js.

Argued September 23—officially released December 21, 2010

*Warren L. Holcomb*, with whom, on the brief, was *Richard J. Buturla*, for the appellant-appellee (defendant).

*Jason Gladstone*, with whom, on the brief, was *Gregory J. Williams*, for the appellee-appellant (plaintiff).

*Opinion*

ALVORD, J. This appeal arises from a business disagreement between the plaintiff, Waterview Site Services, Inc., and the defendant, Pay Day, Inc. On appeal, the defendant claims that the court improperly found that (1) the defendant consented to the work that the plaintiff performed, (2) the mechanic's lien was filed in a timely manner and (3) the defendant was unjustly enriched in the amount of $224,959.24. The plaintiff filed a cross appeal challenging the court's decision that, in calculating the unjust enrichment award, it would credit the defendant for an amount equal to the fair rental value owed by the plaintiff for occupying the land. We disagree with the claims raised by both parties and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. James R. DeVito, a general contractor, is a partial owner of the plaintiff. Salvatore DiNardo is a real estate investor who serves as an officer and owner of numerous companies, including his partial ownership interest in the defendant. DeVito and DiNardo have a lengthy history of doing business with each other, often through their respective corporations.[1]

In 2001, the defendant purchased 575 Asylum Street, Bridgeport, a vacant lot in an industrial area (property).

---

[1] In the present case, these two individuals, DeVito and DiNardo, were the primary actors in all transactions between the plaintiff and the defendant. On appeal, it is undisputed that they were acting as agents under the authority of their respective corporations.

The property was overgrown and had been unoccupied for a number of years. Subsequently, DeVito and DiNardo entered into an oral agreement allowing the plaintiff's use and occupancy of the property. The individuals offered conflicting testimony as to the terms of this agreement. The plaintiff argues that both parties expected the performance of extensive site improvements, the cost of which would be shared equally. The plaintiff also claims that, after it completed the site work, the property was going to be used for a rock crushing and processing operation and that title to the property was to be transferred to a company owned equally by DiNardo and DeVito. The defendant contends that the corporations entered a straightforward lease agreement that permitted the plaintiff to use the property as a contractor's yard or construction yard and that any site work done by the plaintiff was to be credited against rent.

The plaintiff spent a significant amount of time and effort preparing the property for a processing operation. Subsequently, the relationship between the parties soured, and the defendant initiated summary process proceedings. In turn, the plaintiff provided invoices to the defendant, citing expenditures of $269,868.79.[2] The plaintiff filed a certificate of mechanic's lien on October 7, 2004, in the same amount. Thereafter, the plaintiff filed a two count complaint on January 6, 2005, seeking (1) foreclosure of the mechanic's lien and (2) damages for unjust enrichment. The defendant denied the plaintiff's claims. It filed a counterclaim and two special defenses, requesting compensation or a setoff against any recovery for valuable natural resources removed by the plaintiff without permission.[3]

---

[2] According to the defendant's posttrial brief, the total of the cost sheets was $269,868.79, but the plaintiff only claimed $260,959.24 in damages during the litigation, after subtracting certain expenses. It was this adjusted number that the court ultimately used in calculating the unjust enrichment award.

[3] The defendant impleaded DeVito as a third party defendant. On February 23, 2006, DeVito, individually, filed a complaint against DiNardo and the

The court ruled in favor of the plaintiff on both counts of the complaint, stating that the plaintiff expended "substantial sums in time and money" improving the property. It rendered judgment of foreclosure on the mechanic's lien, and continued the matter for further proceedings to make other findings consistent with that judgment.[4] The court also found in favor of the plaintiff on the unjust enrichment claim, in the total amount of $224,959.24, which represented the total adjusted amount pleaded by the plaintiff as reflected in the invoices, after subtraction of $36,000 for the fair rental value of the property during the time that the plaintiff occupied the property. The court rendered judgment in favor of the plaintiff on the counterclaim. This appeal followed.

I

The defendant first contends that the court erred in finding that it consented to the site work performed by the plaintiff. It argues that consent for the purpose of the mechanic's lien statute requires that the defendant not only knew that the work was being performed but also agreed that it may be liable for the materials or labor. We agree with the court's finding that the required consent was present for the purposes of foreclosing the mechanic's lien.

As an initial matter, we dismiss the defendant's argument that because the court found no "meeting of the

---

defendant in this action. Although not officially consolidated through a motion to the court, the two cases were tried concurrently by agreement of the parties. In rendering its decision, the court was unpersuaded by any of the allegations against any of the individuals. None of the claims against DeVito or DiNardo were appealed. Therefore, this court will only review the claims between the corporate entities.

[4] On March 24, 2009, the court set the law day for May 12, 2009. The parties stipulated to attorney's fees of $41,168. The judgment lists the debt as $326,036.32, and the property's fair market value as $450,000. In the complaint, the plaintiff notes a prior encumbrance on the property in the amount of $300,000.

minds" in respect to the contract claims that DeVito filed, individually; see footnote 3 of this opinion; it could not in turn enforce the mechanic's lien under the theory of an implied contract. The trial court's finding that there was no meeting of the minds on the contract governing the overall agreement, which controlled use of the property, site work, future dealings and purchase of machinery, among other things, does not preclude a finding of limited consent for the purposes of the mechanic's lien.

General Statutes § 49-33, which governs mechanic's liens, provides in relevant part: "(a) If any person has a claim for more than ten dollars for materials furnished or services rendered . . . in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land . . . then the plot of land, is subject to the payment of the [mechanic's lien]. . . ."

"Under . . . § 49-33 (a), the consent required from the owner . . . is more than the mere granting of permission for work to be conducted on one's property . . . or the mere knowledge that work was being performed on one's land. . . . The consent meant by the statute must be a consent that indicates an agreement that the owner of at least the land shall be, or may be, liable for the materials or labor." (Citations omitted; internal quotation marks omitted.) *St. Catherine's Church Corp.* v. *Technical Planning Associates, Inc.*, 9 Conn. App. 682, 684, 520 A.2d 1298 (1987).

Whether the plaintiff consented to the performance of the defendant's work is a question of fact. Id., 685. Our review of the trial court's factual findings is limited to the question of whether the findings are clearly erroneous. Id. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . .

or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 487, 970 A.2d 592 (2009).

Because there was no written contract between the parties, the court's conclusion that there was consent for the purposes of foreclosure of the mechanic's lien rested primarily on its assessment of the weight and credibility to be accorded to the witness' testimony. In reviewing the record, we conclude that there is sufficient evidence to support the court's findings. DeVito testified to his belief that there was an agreement that the defendant would be responsible for the cost of site work. DiNardo frequented the property during the period of time the work was being performed and, in fact, explicitly directed certain actions. He also caused direct payment to be made to subcontractors for work performed at the site. The court may have credited these pieces of evidence in finding that the defendant consented to being held liable for the payments as required under the statute.

Furthermore, the defendant's position is that it intended to offset the rent by the cost of the site work, which again supports the finding that the defendant consented to being held financially liable for materials and labor used for the site work. In light of this evidence, the court's finding that the defendant consented to the site improvements for the purposes of the implied contract, as required under the mechanic's lien statute, is not clearly erroneous. Accordingly, we affirm the court's decision in favor of the plaintiff.

II

The defendant next contends that the trial court erred in finding that the plaintiff filed its mechanic's lien in

a timely matter. Precedent shows that "the general rule is that the time period for filing a certificate of mechanic's lien commences on the last date on which services were performed or materials were furnished . . . . An exception arises, however, when work has been substantially completed and the contractor unreasonably has delayed final completion . . . . In this circumstance, the time period for filing a certificate of mechanic's lien will be computed from the date of substantial completion." (Citations omitted; internal quotation marks omitted.) *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 697, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007).

In the present case, the court stated only that "the date of filing of the lien by [the plaintiff] does not render it invalid, as alleged by [the defendant]." It did not make a finding as to the last date on which services were performed or materials were furnished, a necessary fact under which the timeliness of the lien would be measured. The parties argue contradictory dates in their briefs. The defendant failed to move for articulation pursuant to Practice Book § 66-5. The timeliness of the mechanic's lien claim, therefore, cannot be reviewed because the record is inadequate. See Practice Book § 61-10; *State* v. *Miller*, 121 Conn. App. 775, 787, 998 A.2d 170, cert. denied, 298 Conn. 902, 3 A.3d 72 (2010).

III

Finally, the defendant argues that the trial court erred in finding that the plaintiff should recover the amount awarded, or at all, under the equitable doctrine of unjust enrichment. The defendant contends that "other than simple invoices" there is no evidence of the value or quality of the work performed or the benefit conferred on the property, and, therefore, the court's finding is clearly erroneous. We disagree.

"A right of recovery under the doctrine of unjust enrichment is essentially equitable . . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . .

"[E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Stewart* v. *King*, 121 Conn. App. 64, 70–71, 994 A.2d 308 (2010).

Although the defendant is correct that the damages in an unjust enrichment case ordinarily are not measured by the loss to the plaintiff but by the benefit to the defendant, a fact finder may rely on a party's own testimony about the value of his labor when the benefit is too difficult to determine otherwise. See *Data-Flow Technologies, LLC* v. *Harte Nissan, Inc.*, 111 Conn. App. 118, 127, 958 A.2d 195 (2008); *Gardner* v. *Pilato*, 68 Conn. App. 448, 455, 791 A.2d 707, cert. denied, 260 Conn. 908, 795 A.2d 544 (2002). In the present case, the court found that the plaintiff expended "substantial

sums in time and money working on improving the property" and that the property was improved by the work done. The plaintiff (1) offered invoices showing that expenditures from site work on the property totaled $260,959.24, (2) explained its method of production of the invoices, (3) confirmed that the invoices represented a fair and reasonable amount for the work that was performed by the plaintiff on the property, and (4) described the work completed in detail.

Thus, there is an abundance of evidence in the record that the trial court may have relied on in finding that the site work performed by the plaintiff improved the nature of the previously unoccupied lot. This evidence provided the court with a sound basis for setting the amount of recovery at $224,959.24. Given the testimony, the invoices and our limited scope of review, we conclude that the fact finder's application of the doctrine of unjust enrichment was not clearly erroneous.

## IV

The plaintiff filed a cross appeal arguing that the trial court erred in reducing the invoiced $260,959.24 by the amount of $36,000 for the fair rental value of the property during the plaintiff's use and occupancy. The plaintiff argues that the defendant failed to plead that it was entitled to such setoff, and, therefore, the court exceeded its authority by reducing the plaintiff's damages.[5] We disagree.

---

[5] The defendant made similar arguments in the form of a special defense of setoff and as a counterclaim. In both arguments, the defendant asked the trial court to compensate it for natural resources that were allegedly removed from the property by the plaintiff. The distinction between a counterclaim and a setoff, or offset, is subtle. "If the claim involves a debt which is mutual and liquidated, even though it arises from separate transactions, it is characterized as a setoff. See General Statutes § 52-139. If the claim arises out of the same transaction described in the complaint, it is characterized as a counterclaim. . . . The title of the pleading is not controlling. The issue is, rather, whether sufficient facts are pleaded that would allow recovery either as a setoff or as a counterclaim." (Citation omitted; internal quotation marks omitted.) *225 Associates* v. *Connecticut Housing Finance Authority,*

Unjust enrichment is a broad and flexible remedy. *Breen* v. *Judge*, 124 Conn. App. 147, 158, 4 A.3d 326 (2010). Recovery is rooted in the equitable principle that it is "contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." (Internal quotation marks omitted.) *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 597, 489 A.2d 1034 (1985). "Unjust enrichment is a common-law doctrine allowing damages for restitution, that is, the restoration to a party of money, services or goods of which he or she was deprived that benefited another." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 440 n.2, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). "In calculating restitution damages, the trial court balances the equities of the parties to determine where the loss should fall. . . . This balancing of equities is a matter within the trial court's broad discretion." (Citation omitted.) *Polverari* v. *Peatt*, 29 Conn. App. 191, 203, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 166 (1992).

Applying these principles to the case at hand, we conclude that it was within the province of the court, in balancing the equities of this case, to subtract the fair rental value of the property from the total amount invoiced to establish the final net unjust enrichment award.[6] Upon awarding damages for unjust enrichment, the court stated that "[i]n the interests of justice . . . the court does grant [the defendant] a setoff for the

65 Conn. App. 112, 121, 782 A.2d 189 (2001). In the present case, the trial court's decision to decrease the damages invoiced need not be labeled a setoff or a counterclaim. Instead, fair rental value of the property was merely one equitable factor the court took into consideration in assessing the overall damages for unjust enrichment.

[6] This court has held that in awarding damages for quantum meruit, the trial court did not exceed its authority in reducing a plaintiff's damages award even when the defendant failed to plead that it was entitled to such setoff. *Shapero* v. *Mercede*, 77 Conn. App. 497, 509–10, 823 A.2d 1263 (2003).

value of the rent for [the plaintiff's] use of the property . . . ." The court, in its decision, credited the plaintiff's testimony that the average monthly rent for a comparable lot would be between $1500 and $3000. The defendant did not object to this testimony. The court, therefore, calculated that the fair rental value of the property amounted to $36,000 for eighteen months at $2000 per month. In part III of this opinion, we affirmed the court's decision to award damages for unjust enrichment and recognized the court's wide discretion in balancing the equities to determine that amount. The court's calculation of the amount by which the defendant was unjustly enriched finds support in the record before us, and it was within the court's discretion to consider the fair rental value of the property in establishing the overall award.

The judgment is affirmed.

In this opinion the other judges concurred.

