******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN PAJOR *v.* ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT, ET AL.
(AC 38604)

Alvord, Sheldon and Norcott, Js.

*Argued March 8—officially released June 27, 2017*

(Appeal from Superior Court, judicial district of New
Britain, Young, J.)

*Mariusz Kurzyna*, for the appellant (plaintiff).

*Richard T. Sponzo*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general, and *Philip M. Schulz*, assistant attorney general,
for the appellee (named defendant).

*Opinion*

NORCOTT, J. The plaintiff, John Pajor, appeals from the judgment of the trial court dismissing his appeal from the decision of the Employment Security Appeals Division Board of Review (board), which dismissed his appeal from the dismissal of his challenge to a finding that he had been overpaid certain unemployment compensation benefits. On appeal, the plaintiff claims that the court improperly (1) applied the wrong standard of review to the board's decision on his motion to correct findings, and (2) concluded that the board's determination that the plaintiff did not show good cause for failing to attend a hearing on remand before an appeals referee was not arbitrary, unreasonable, or an abuse of discretion. We disagree and, accordingly, affirm the judgment of the trial court.

The record reflects the following facts and procedural history. The plaintiff worked full-time for Wal-Mart Associates, Inc. (Wal-Mart) from September 18, 1999, to April 28, 2012, earning $12.30 per hour. He subsequently was discharged on April 29, 2012, after which time he filed a claim for partial unemployment compensation benefits. While he was employed at Wal-Mart, the plaintiff also worked full-time at EBM Papst, Inc. (EBM). On August 31, 2012, an appeals referee (referee) approved the plaintiff's claim for partial benefits on the basis of on his discharge from Wal-Mart. The plaintiff, however, subsequently left his job at EBM on September 14, 2012,[1] having accepted an offer for a position at Corbin Russwin.

The plaintiff states, in his brief, that he discontinued his claim for benefits against Wal-Mart after accepting the offer for employment at Corbin Russwin. The record, however, fails to reflect such discontinuation. From our careful review of the record, it appears that the plaintiff failed to notify the defendant Administrator, Unemployment Compensation Act (administrator),[2] about his voluntary separation from EBM. Instead, the record reflects that, as part of a routine audit of the plaintiff's benefits account, the administrator, by way of a letter dated September 11, 2012, requested that EBM indicate, in a certificate of earnings, the gross earnings of the plaintiff for the weeks for which the plaintiff received partial benefits. EBM subsequently sent this information, as well as a letter from the plaintiff to EBM indicating his desire to terminate his employment with EBM. It appears that the administrator, upon learning of the plaintiff's voluntary separation from EBM, initiated the investigation into whether the plaintiff had fraudulently received partial benefit payments because of his failure to disclose his full-time employment at EBM during the period of time in which he was receiving partial unemployment compensation benefits.

The plaintiff states that he did, in fact, disclose that

he was working full-time at EBM in his initial claim for partial unemployment compensation benefits, and that this prior disclosure is the reason why he responded "no" to the following weekly claims question: "Did you work full time or part-time for an employer or in self-employment or return to full-time work during the week ending last Saturday, which you have not already reported?" The record, however, does not contain the plaintiff's initial claim for benefits, or any disclosure to the administrator that he was concurrently working full-time at EBM during the period in which he was receiving benefits. Thus we cannot discern whether the plaintiff did, in fact, make such a disclosure. Additionally, the record contains a sheet entitled "Fact Finding Report Claimant Statement," which contains a statement from the plaintiff that he "did not report the earnings because [he] had been laid off from Wal-Mart and [that he had] reported that to the Department of Labor."

The plaintiff further states that the administrator informed him that he was "eligible for benefits by virtue of losing his full-time position with Wal-Mart even while he continued in his other full-time position at EBM." The record reflects, however, that the administrator, in an overpayment and administrative penalty decision dated November 9, 2012, stated that the plaintiff received fraudulent benefit payments because he failed to disclose his earnings from EBM during the benefits period.

In its November 9, 2012 decision, the administrator determined that, effective September 9, 2012, the plaintiff was no longer eligible for benefits stemming from his discharge from Wal-Mart because of his voluntary separation from EBM. The administrator also determined that the plaintiff was not entitled to the benefits he had received while employed full-time at EBM and that, as a result, the plaintiff had fraudulently received an overpayment of $4599 due to unreported earnings from EBM from the weeks ending July 21, 2012 to September 15, 2012. The plaintiff appealed that decision to a referee pursuant to General Statutes § 31-237j.[3]

The referee heard that appeal on December 26, 2012, and issued his decision on December 31, 2012. In that decision, the referee dismissed the appeal due to the plaintiff's failure to file the appeal within the statutorily prescribed period.[4] Thereafter, the plaintiff filed a motion to open the referee's decision on January 21, 2013, which the referee denied on January 25, 2013. The plaintiff filed an appeal to the board, challenging both the December 31, 2012 decision and the referee's January 25, 2013 decision. The board reversed both decisions, concluding that the plaintiff had shown good cause for filing an untimely appeal because he did not "receive . . . [the notice] advisements in his native language." Furthermore, it determined that the plaintiff was genuinely confused by the administrator's decision

that he was disqualified from receiving benefits from Wal-Mart, based on his separation from EBM, and that such confusion served as an additional basis for good cause to excuse the late filing of the appeal. The board remanded the case to the referee to conduct further proceedings on the merits of his appeal.

A hearing on remand before the referee was scheduled for July 9, 2013. The plaintiff failed to appear. The appeals referee subsequently issued a decision on July 10, 2013, dismissing the appeal for failure to attend the hearing. On July 29, 2013, the plaintiff filed a motion to open the referee's decision on the basis that he had failed to attend the hearing because he thought that his attorney would "take care of it," therefore obviating his need to attend the hearing in person.[5] The referee denied the plaintiff's motion on August 8, 2013, on the ground that the plaintiff could not show good cause to open the decision. Specifically, the referee concluded that the plaintiff's claim that he failed to understand the necessity of attending the hearing in person as a result of a language barrier was unavailing, and that the plaintiff deliberately failed to attend the hearing as a delay tactic. The plaintiff appealed that decision to the board on August 28, 2013.

On September 30, 2013, the board affirmed the referee's decision and dismissed the appeal. It also denied the plaintiff's subsequent motion to open the board's decision. On January 13, 2014, the plaintiff appealed from the board's decision to the Superior Court. He also filed a motion to correct the board's findings on August 14, 2014.[6] Relevant to this appeal, the plaintiff specifically challenged the board's finding of fact that his counsel was proficient in Polish, and its finding regarding the plaintiff's misunderstanding as to his counsel's involvement in the remand hearing. On October 21, 2014, the board denied in part and granted in part the plaintiff's requested corrections.[7] The plaintiff subsequently amended his appeal to the Superior Court and filed claims of error with regard to the board's decision on his motion to correct findings. The court dismissed the plaintiff's appeal, concluding that "[t]here is nothing in the record to indicate that the decision of the board was unreasonable, arbitrary or illegal. There is evidence to support the finding of facts as corrected. The board's decision is logically based upon the findings of fact." This appeal followed.

## I

The plaintiff first claims that the court applied the incorrect standard of review regarding the board's decision on his motion to correct findings. Specifically, he argues that the court failed to apply the standard set forth in *McQuade* v. *Ashford*, 130 Conn. 478, 482–83, 35 A.2d 842 (1944), which the plaintiff claims to require the board, upon the plaintiff's filing of a motion to correct, to admit as true the denied underlying findings

of fact that the plaintiff claims are undisputed and material to a subsequent appeal. Because the facts upon which the plaintiff relies are, in fact, disputed, we conclude that *McQuade* is distinguishable from the present case.

"[O]ur analysis of whether the court applied the correct legal standard is a question of law subject to plenary review." (Internal quotation marks omitted.) *Breen* v. *Judge*, 124 Conn. App. 147, 158, 4 A.3d 326 (2010).

At the outset, we must address the plaintiff's argument that, because he filed a motion to correct findings in accordance with Practice Book § 22-4, the trial court was neither bound by, nor precluded from reviewing, the board's credibility determinations. The plaintiff misconstrues our case law.

It is well established that the failure to file a motion to correct findings of the board precludes an appellant from challenging those facts as found by the board and further limits this court only to consider the board-certified evidence. *Reeder* v. *Administrator, Unemployment Compensation Act*, 88 Conn. App. 556, 558, 869 A.2d 1288, cert. denied, 275 Conn. 918, 883 A.2d 145 (2005); see also *Davis* v. *Administrator, Unemployment Compensation Act*, 155 Conn. App. 259, 262–63, 109 A.3d 540 (2015). The plaintiff is also incorrect in his assertion that the filing of such a motion permits the court to review the board's credibility determinations. Practice Book § 22-9 (b) provides: "Corrections by the court of the board's finding will only be made upon the refusal to find a material fact which was an admitted or undisputed fact, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear, or upon the finding of a material fact without evidence." Section 22-9 (a) provides that, despite the filing of a motion to correct, a court's review of the board's findings does not extend to "conclusions of the board when these depend on the weight of the evidence and the credibility of witnesses."

Turning to the gravamen of the plaintiff's claim, he argues that our Supreme Court, in *McQuade* v. *Ashford*, supra, 130 Conn. 482–83, sets forth the standard of review that governs this claim. In particular, the plaintiff argues that *McQuade* mandates that the trial court "accept as true undisputed facts essential to [the plaintiff's] claims," and cites to *McQuade* for the following principle: "The finding in a compensation case should contain all the subordinate facts which are pertinent to the inquiry, and the conclusions of the commissioner therefrom. . . . If a finding does not conform to these requirements . . . neither the Superior Court nor this court is in a position to decide whether the award was correct and just or not. . . . To refuse to find the facts which a party seeks to have stated because the commissioner deems them unnecessary or immaterial is not ordinarily fair to the parties, the court or the State and

its officers. It is not fair to the parties because they are entitled to have found such proven facts as they deem it necessary to present to the court upon the appeal." (Citations omitted; internal quotation marks omitted.) *McQuade* v. *Ashford*, supra, 482. The court in *McQuade* ultimately held that the trial court "should have returned the case to the [board] with a direction to correct the finding by adding such of those facts contained in the plaintiff's motion to correct as [it] found to be either undisputed or established upon conflicting evidence." Id., 484.

On appeal to this court, the plaintiff argues that the foregoing language required the board to accept as true the facts that he claims to be undisputed, relevant, and material to his case in a potential appeal. In particular, the plaintiff argues that the board should have accepted as true the requested facts that (1) although Polish was his counsel's first-acquired language, counsel's proficiency in the language had diminished over the twenty-six years since he immigrated to the United States, and (2) that the plaintiff failed to attend the July 9, 2013 hearing because he mistakenly believed that his counsel would "take care of it" by appearing as his representative or providing him with additional information.[8]

In its memorandum of decision, the trial court held that *McQuade* does not apply to the present case because that case "concerned a cause of action brought pursuant to the Worker's Compensation Act, General Statutes § 31-291, et seq.," and cites to *McQuade* for the principle that "[c]ases under the [Worker's] Compensation Act . . . are upon a different basis from actions between ordinary litigants." (Internal quotation marks omitted.) Id., 482. The court subsequently noted that our courts have not extended the *McQuade* analysis to unemployment compensation appeals, and thus it did not consider a *McQuade* analysis when it rendered its decision in this unemployment compensation appeal. Although we agree with the trial court that our courts have not yet extended *McQuade* to unemployment compensation appeals, we need not consider the extension of *McQuade* in the present case because its facts are distinguishable from the facts here. In this appeal, the plaintiff's first requested correction of fact is disputed, and therefore *McQuade* does not apply. The plaintiff requested a correction to the board's finding with regard to his counsel's diminished proficiency in Polish by arguing, essentially, that such a finding was significant to their conversation concerning his attendance at the July 9, 2013 hearing. The board denied that request and concluded that such a finding was not supported by the record because the plaintiff's counsel specifically wrote that he communicated with the plaintiff in Polish, "the native language of both," a phrase which the board found to be unambiguous. It further determined that the record failed to support the plaintiff's request to adopt a finding that, although Polish

was his counsel's first-acquired language, counsel's proficiency in it had diminished over the twenty-six years since he immigrated to the United States. In particular, the board explained that, on the basis of counsel's statement that "[a]lthough Polish is my first language, I immigrated to the United States as a child and have spent most of my *adult* life not speaking the language," it could "not infer from this statement that [the plaintiff's counsel] has rarely spoken Polish during most of his adult life, nor can we infer that his ability to communicate in Polish has diminished in the twenty-six years since he immigrated to the United States. We decline to add a separate finding of fact that Polish is [counsel's] first-acquired language because such a finding would be unduly repetitive of our finding of fact that [counsel] is a native Polish speaker." (Emphasis original.)

In *McQuade*, the plaintiff was not challenging existing findings of facts. Instead, the plaintiff in that case requested the finding of additional material facts that were pertinent to a subsequent appeal. *McQuade* v. *Ashford*, supra, 130 Conn. 484. By contrast, the plaintiff in the present case asked the trial court to make contrary findings as to a fact that the board has already determined. Moreover, he requests that this court direct the trial court to make contrary findings as to a disputed fact. Practice Book § 22-9 (b), however, prohibits such a request.

The plaintiff's second requested correction seeks to have the board adopt a finding that the plaintiff failed to attend the referee's July 9, 2013 remand hearing because he mistakenly believed that his counsel would "take care of it" by appearing as his representative or by providing him additional instructions. The board denied the plaintiff's requested correction on the basis that he was "requesting the board to reweigh evidence in the record and reverse its credibility determination that the [plaintiff] was aware that he needed to appear at the referee's July 9, 2013 hearing, but deliberately chose not to attend the hearing."[9] As described in the preceding paragraphs, Practice Book § 22-9 (a) prohibits a court from reviewing the board's credibility determinations.

It is clear that *McQuade* does not apply in the present case and that Practice Book § 22-9 (a) and (b) precluded the trial court from directing the board to adopt the plaintiff's requested corrections of fact. We therefore reject the plaintiff's first claim.

II

The plaintiff next claims that the court improperly concluded that the board's determination that he lacked good cause for his failure to attend the remand hearing was not arbitrary, unreasonable, or an abuse of discretion. Specifically, he argues that he had been actively prosecuting the appeal for a year, and, thus, the refer-

ee's determination that he deliberately chose not to attend the remand hearing as a "delay tactic" was unavailing. The plaintiff further argues that he failed to attend the hearing because of a language barrier between himself and his counsel. He alleges that, during a meeting following the board's remand to the referee for a hearing on the merits, his attorney communicated with him in Polish, the language in which the plaintiff is proficient, in regard to the upcoming hearing, and that he had left that meeting with the mistaken impression that his counsel would "take care of" the hearing, either by attending it or providing him with further instructions. We are not persuaded by the plaintiff's arguments.

"It is well established that [r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Internal quotation marks omitted.) *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, 320 Conn. 611, 622–23, 134 A.3d 581 (2016). Similar to the prohibition on a court's ability to review conclusions of the board based upon the weight of the evidence and the credibility of witnesses, "[j]udicial review of the conclusions of the law reached administratively is also limited." (Internal quotation marks omitted.) *Chicatell* v. *Administrator, Unemployment Compensation Act*, 145 Conn. App. 143, 149, 74 A.3d 519 (2013). "Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Internal quotation marks omitted.) *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 623.

General Statutes § 31-242 authorizes an appeals referee to hold a hearing de novo on an appeal from the administrator's decision on a claimant's eligibility for unemployment compensation. Section 31-237g-26 (b) (1) of the Regulations of Connecticut State Agencies provides that, if the appealing party fails to timely appear at the referee's scheduled hearing, the referee may dismiss the appeal due to the appealing party's failure to prosecute the appeal if there is no error apparent on the face of the record. General Statutes § 31-248 (b) provides that any decision of the referee may be reopened on "grounds of new evidence or if the ends of justice so require upon good cause shown."

The board's September 30, 2013 findings of fact state

that the plaintiff received notice of the hearing on June 24, 2013, and that his counsel translated that notice to him in Polish, the plaintiff's native language. The board further found that the plaintiff's counsel informed him that he needed to respond directly to the referee's and the employer's questions at the hearing, which were to be based on the specific advisement in the board's May 31, 2013 decision. Upon the plaintiff's statement that he could not pay an attorney to attend the July 9, 2013 hearing, the plaintiff's counsel informed him that his case was "clear cut" and the plaintiff should prevail without an attorney present at the hearing as long as he responded to the referee's or employer's questions at the hearing. The board further found that the plaintiff had attended the referee's December 26, 2012 hearing and had received a similar hearing notice to appear at that hearing, and thus that it was not plausible that the plaintiff would not understand that he needed to appear at the referee's July 9, 2013 hearing. The board then found that, under the foregoing circumstances, the plaintiff had deliberately chosen not to attend the referee's hearing. Accordingly, it concluded that the plaintiff had not shown good cause for his failure to participate in the referee's hearing and that he had failed to prosecute his appeal because of his failure to attend the hearing. The board also concluded that the referee did not abuse his discretion in dismissing the appeal for lack of prosecution or in denying the plaintiff's motion to reopen.

The plaintiff, on appeal, does not dispute the board's findings that he met with his counsel and discussed the scheduled hearing. He argues only that he misunderstood his counsel's advice because his counsel had an alleged limited ability to communicate in Polish. It is clear, in our review of the board's September 30, 2013 decision, that its findings depended on the weight of all of the evidence before it and that those findings did not discount the plaintiff's conversation with his counsel about the hearing. In fact, the board made a credibility determination that the plaintiff's alleged confusion lacked merit in light of his counsel's advice that he would prevail if he answered the referee's and employer's questions at the hearing. It further determined that he had received a similar notice to appear at a prior hearing and did so appear, and thus he should have been well aware of his required presence at the July 9, 2013 hearing.

On the basis of the record before us, we conclude that the board was presented with substantial evidence to justify its conclusions concerning the plaintiff's failure to prosecute the appeal. Accordingly, we agree with the court that the board's decision was logically based upon its findings of fact, and that there is nothing in the record to indicate that its decision was unreasonable, arbitrary, or illegal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff did not file a specific claim for benefits against EBM.

[2] The plaintiff also named EBM and the board as defendants, but they are not participating in the appeal to this court.

[3] General Statutes § 31-237j provides in relevant part: "The referees shall promptly hear and decide appeals from the decisions of the administrator of this chapter, or his designee, appeals from all other determinations made pursuant to any provision of this chapter and appeals from any proceeding conducted by authorized personnel of the Employment Security Division. . . ."

[4] The referee had determined that he did not have jurisdiction to consider the plaintiff's late appeal. But see Regs., Conn. State Agencies § 31-237g-15 (a) (any appeal filed after twenty-one day period has expired may be considered to be timely filed if filing party demonstrates good cause for late filing).

[5] General Statutes § 31-248 (b) provides in relevant part: "Any decision of a referee may be reopened, set aside, vacated or modified on the timely filed motion of a party aggrieved by such decision . . . on grounds of new evidence or if the ends of justice so require upon good cause shown."

[6] Specifically, the plaintiff requested that the board revise its findings of fact that: (1) his counsel translated to him the June 24, 2013 hearing notice; (2) his counsel's native language was Polish; (3) his counsel informed him that he needed to respond directly to the referee's and employer's questions at the July 9, 2013 hearing; (4) the plaintiff told his counsel that his case is "clear cut" and that he could not afford to have counsel present at the hearing; and (5) the plaintiff attended the referee's December 26, 2012 hearing and received a similar hearing notice to appear at that hearing. The plaintiff requested that the board replace the findings of fact with the following: (1) "[t]he [plaintiff] was not represented by counsel when he appealed the administrator's determination, when he received notice of the referee's December 26, 2012 hearing, or when he attended said hearing"; (2) "[a]fter the December 31, 2012 dismissal of the [plaintiff's] appeal by the referee, [the plaintiff's counsel] agreed to assist the [plaintiff] with appealing the referee's decision to the [b]oard"; (3) "[t]he [b]oard sustained the [plaintiff's] appeal and remanded the matter to the referee for further proceedings"; (4) "[u]pon receipt of the notice for the July 9, 2013 remand hearing, [the plaintiff's counsel] met with the [plaintiff] to explain the [b]oard's decision and the ongoing process of appealing the administrator's determination"; (5) [t]he [plaintiff] told [his counsel] that he could not pay an attorney to attend the remand hearing"; (6) "[the plaintiff's counsel] told the [plaintiff] that his case was clear cut and that the [plaintiff] should prevail without an attorney present at the hearing so long as he abides by the admonishment in the May 31, 2013 decision of the [board] to 'respond directly to the referee's or the employer's questions at the referee's remand hearing'"; (7) "[the plaintiff's counsel] also told the [plaintiff] that if he followed those instructions, it was highly unlikely that the referee would rule against him, but should such a contingency occur, [the plaintiff's counsel] would help the [plaintiff] with another appeal to the [b]oard"; (8) "[d]uring the same meeting, the [plaintiff] spoke to [his counsel] about the need to correct the [defendant's] alleged delay in acknowledging the [plaintiff's] initial claim and the consequent nonpayment of benefits for most of his eligible weeks, [and, in response, the plaintiff's counsel] told the [plaintiff] that he might be able to assist him after the [plaintiff] receives a decision on waiver of any overpayment penalties in the present case"; (9) "Polish was [his counsel's] first-acquired language, but has been rarely used during most of his life and [counsel's] ability to communicate in Polish has diminished in the twenty-six years since he immigrated to the United States as a child"; (10) "[counsels'] command of Polish is much better than the [plaintiff's] command of English and they communicate with each other in Polish"; and (11) "[t]he [plaintiff] failed to attend the July 9, 2013 remand hearing because he mistakenly believed that [his counsel] would 'take care of it' by appearing as his representative or providing him additional instructions."

[7] The board declined the plaintiff's request to delete the board's finding that his counsel's native language was Polish, and denied the plaintiff's first, seventh, eighth, ninth, and eleventh requests for corrections of fact. It granted the remainder of the plaintiff's requests. The board found that, while Polish may very well be counsel's first-acquired language, the record did not support a finding that he rarely spoke it during most of his life, or that his ability to communicate in Polish has diminished since he immigrated to the United States. With regard to the plaintiff's seventh, eighth and ninth requests, respectively, the board concluded that the requested findings were

neither relevant nor material to the determination of whether the plaintiff had good cause for failing to attend the referee's July 9, 2013 hearing. Finally, it denied the plaintiff's eleventh request on the basis that the plaintiff was improperly "requesting that the board reweigh the evidence in the record and reverse its credibility determination that the [plaintiff] was aware [that] he needed to appear at the referee's July 9, 2013 hearing, but deliberately chose not to attend the hearing."

[8] The plaintiff does not raise any claims on appeal to this court with respect to the other requested findings of fact that were denied.

[9] The record refutes the plaintiff's assertion in his brief that the board refused to adopt this finding on the basis that it was neither relevant nor material to its determination that the plaintiff lacked good cause for his failure to attend the hearing.

———————————————